## Case No. 6,408.

### The HERMANN.

[4 Blatchf. 441.] [1]

Circuit Court, S. D. New York. Aug. 17, 1860.

COLLISION — BETWEEN STEAMER AND SAILING VESSEL—DAMAGES—LAY DAYS.

1. Where a steamer at sea, heading to the eastward, discovered an object about a point on her port bow, and immediately ported her helm, thinking the object to be a vessel standing to the eastward, and, on approaching nearer, discovered it to be a vessel under sail, but could not determine how it was standing, and still kept her helm to port, and then discovered that the vessel was standing by the wind, which was northwest, but could not tell on which tack, and still kept her helm hard to port, and then discovered that the vessel was on her starboard tack, and within a minute and a half struck her, the steamer not having slackened her speed, or slowed or backed, and it appeared that, if the true position of the vessel had been known, the steamer would have starboarded her helm and would then have gone clear: *Held*, that the steamer was liable for the collision.

[Cited in Hoben v. The Westover, 2 Fed. 93; The State of California, 1 C. C. A. 224, 49 Fed. 174.]

2. A charge for lay days in a charter party furnishes no test to determine the damages for detention during the repair of a vessel, in a case of collision.

[Cited in The James A. Dumont, 34 Fed. 429; The Margaret J. Sanford, 37 Fed. 150.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by Peter Grant and others, owners of the bark Reindeer, against the steamship Hermann, for a collision between the two vessels. The district court decreed for the libellants, and the claimants appealed to this court.

Edward H. Owen, for libellants.
Daniel Lord, for claimants.

NELSON, Circuit Justice. The collision in this case occurred on the night of the 24th of August, 1854, in the chops of St. George's Channel. The bark was on her way from London to Boston; the steamship from New York to Southampton. The night was not very dark. I take the facts as stated by the chief officer of the Hermann, who was on deck at the time, and had the general charge of the vessel, and by the third mate, whose watch it was on deck, and who witnessed the collision. Their statements concur, and are clear and candid. The chief mate says, that he was walking on the port side of the quarter-deck, and that, on hearing the bells indicating an object in view on the port bow, he stepped forward on the port paddle-box, and discovered the object about a point on the port bow, and immediately gave the order to port the helm, which was obeyed. He thought the object was a vessel standing to the eastward. After the order, the Her-

mann began to come round to the southward, and was approaching the vessel, and he then discovered it was under sail, but not clearly enough to enable him to determine how it was standing. He, however, repeated the order, "Hard a-port," which was answered. After this he discovered that the vessel was standing by the wind, which was from the northwest, but could not tell on which tack, and he then gave the third order, "Hard a-port," which was also answered, and then, and not before, it became evident that the vessel was standing on her starboard tack, and this not over a minute and a half before the collision. The Hermann was going at the rate of eleven miles an hour, and, during all this time, neither slackened her speed, nor slowed nor backed, till after the collision. The night could not have been very dark, for both the chief officer and the third officer say that they discovered the object, which turned out to be a vessel on her starboard tack, close hauled, a mile and a half distant. The chief officer admits, that if he had known the position of the Reindeer, that is, that she was standing on the wind, he would have starboarded his helm instead of giving the order to port, and that, if he had done so, the Hermann would have gone under her stern. The fault of the Hermann is too obvious to require observation. She should have slowed, stopped, or backed, according to the necessity of the case, until the true position of the Reindeer could be discovered.

On the question of damages, I deduct the charge for demurrage both at Falmouth and at Boston, as not coming within the rule settled in Williamson v. Barrett, 13 How. [54 U. S.] 101, 111, 112. The rule was very deliberately settled in that case, and will be strictly adhered to. The charge for lay days in a charter party, as agreed upon by the parties, and which depends upon no principle, furnishes no test to determine the damages for detention during the repair of a vessel, in a case of collision.

HERMANCE (BUCK v.). See Cases Nos. 2,081 and 2,082.

HERMANCE (UNITED STATES v.). See Cases Nos. 15,355 and 15,356.

HERMANN (DELAUNEY v.). See Case No. 3,757.

HERMANN (MAYER v.). See Case No. 9,344.