# N. Y. COMMON PLEAS.

### HERBERT LAWRENCE and WILLIAM FOULKS agt. THE MAYOR, &c., OF THE CITY OF NEW YORK.

*Department of public charities and correction, New York — contract with, made without public advertisement — requisition upon comptroller for payment signed by two commissioners — liability of corporation — appropriation.*

An action cannot be maintained against the corporation of the city of New York on a contract with the commissioners of the department of charities and correction, unless it is made to appear by proof that there is a fund in the city treasury applicable to the payment of the amount claimed under said contract.

The department of charities and correction in the care and management of the paupers and criminals confided to it, and in the care of boys whose custody for purposes of reformation devolves upon it by law, act *not as agents of the municipal corporation,* but as public officers, agents and servants of the public at large. Therefore, the repairs ordered by the commissioners do not come within the provisions of the charter of 1876, section 105, or of the charter of 1873, section 91, not being work or supplies *"furnished for the corporation;"* i. e., for the mayor, aldermen and commonalty of the city of New York (DALY, C. J., *dissenting*).

The work done upon the school-ship *Mercury* was not one of those acts of immediate and imperative necessity which dispensed with a compliance with the provisions of the charter in respect to sealed proposals (*charter* 1870, *sec.* 104; *charter* 1873, *sec.* 91) or to which it was never intended to apply. (*Per* DALY, *C. J.*)

*General Term, November,* 1875.

*Before* C. P. DALY, *Ch. J.,* LOEW *and* J. F. DALY, *JJ.*

APPEAL by defendants from judgment of special term of this court in favor of plaintiffs for $24,965.37.

The facts sufficiently appear in the opinions.

*William C. Whitney*, counsel to the corporation, argued: I. The defendants' charter required a public letting, founded on sealed bids and proposals, of all work exceeding in value (as did these repairs) the sum of $1,000 (*Laws of* 1870, *chap.* 137, *sec.* 104; *Laws of* 1873, *chap.* 335, *sec.* 91). II. The character of these repairs was not such as to necessarily preclude compliance with the provisions of the charter. III. Neither was the emergency requiring the repairs such as to excuse compliance, with the statute. As to the character of a necessity which will excuse compliance with the law, see Broom's Legal Maxims, 243. IV. The department of charities and corrections was bound by these provisions in the charter of the defendants. The general view of the courts is stated by BRADY, J., in *The Fire Commissioners* agt. *Green* (49 *How.*, 2), as follows: " When the metropolitan fire department was changed by the act (charter of 1876) into a municipal organization, it became subordinate to the city government and subject to the general laws applicable to all the departments unless excepted by legislation, express or implied.

*Elliot Sandford* and *John S. Lawrence*, of counsel for respondents, argued: I. The motion of defendants to dismiss the complaint on the ground that the work had not been done by contract with the lowest bidder, founded on sealed bids or proposals, received pursuant to public advertisement, as provided by section 104 of the charter, was properly denied. The stringent provisions of the charter may be disregarded in case of a sudden emergency (*Smith* agt. *The Mayor*, 21 *How.*, 1; *The Harlem Gas Co.* agt. *The Mayor*, 33 *N. Y.*, 329; *Matter of Dugro*, 50 *id.*, 513; 3 *Robt.*, 100, 129). The provision. requiring a three-fourths vote of the common council only extends to work necessary to be done, to complete or perfect a particular job, and not to work of a general character, nor to a whole job or an original undertaking (*Haughout* agt. *The Mayor, etc.*, 2 *Abb. Ct. App., Dec.*, 344). By the general provisions of law, where the whole number of a

board meet, the acts of a majority control (2 *R. S., sec.* 27, *p.* 869). By section 100 of the charter of 1870, a majority of the members of any board in any department are authorized to discharge any act or duty possessed by the department with the same effect as if such member had been present. It is in all cases inequitable and unjust to permit a party to repudiate a contract, the fruits of which he retains (22 *N. Y.,* 258; *id.,* 494, 508; 19 *Wall.,* 678; *id.,* 468, 484; 17 *Barb.,* 378; 18 *N. Y.,* 240; *Whitney Arms Co.* agt. *Barlow,* 63 *N. Y.,* 62). III. The power of incurring expense by the board of charities and correction in the performance of duties imposed on them by law is independent of, and not affected by, the provisions of any of the charters of the city of New York. The work done by the plaintiffs was not performed for the corporation of the city, but for a board of state officers performing certain functions within the county for the benefit of the state at large (*Maximilian* agt. *The Mayor,* 62 *N. Y.,* 160). And this, although the corporation, as the successor of the county by the consolidation act (*chapter* 304, 1874) is required to raise and pay the money necessary for the support of the board.

J. F. DALY, *J.* — Action for work, labor and materials furnished in repairing the school ship Mercury, pursuant to contract with the commissioners of the department of charities and correction. Defense — that contract was not made after public advertisement for bids and proposals (*charter of* 1870, *sec.* 105; *charter of* 1873, *sec.* 91); that only two of the commissioners signed the requisition upon the comptroller for the payment of plaintiff's claim (*charter of* 1870, *secs.* 100, 101, 102, 105); that the work, labor and services were only worth the sum of $16,000. Plaintiff recovered the whole amount claimed.

It appears that the school ship Mercury was a vessel owned by the department of charities and correction, in use as a school for the reformation of boys under the charge of said

commissioners. She commenced to leak in April, 1873, and on the twenty-first of that month, by resolution of the department, was "turned over to captain Knapp for such repair as may be necessary on consultation with captain Geraud and on report to this board." On May 12, 1873, the secretary of the department addressed a letter to William H. Knapp, stating that the report of captain Geraud and William Faulks and said Knapp on repairs to the school ship Mercury was accepted by the board, and the work ordered to be done by these plaintiffs. The repairs were made by plaintiffs, and there seems to be evidence enough to support the claim that they were necessary and worth the amount charged.

In September, 1873, two of the commissioners of the department (the other refusing to sign) certified that they had examined the bills of plaintiffs specified in the schedule annexed, amounting to $23,011.48, and that they were just and correct; that the articles enumerated in said bills had been received in good condition by and for the necessary and exclusive use of the said department; that the prices charged therein are reasonable and proper, and that the amount of said bills do not exceed the unexpended balance of the appropriation duly made to the said department therefor.

I think it may properly be urged that the repairs ordered by the commissioners *do not come within* the provisions of the charter of 1870 (*sec.* 105), or of the charter of 1873 (*sec.* 91), not being work or supplies "furnished *for the corporation,*" *i. e.,* for the mayor, aldermen and commonalty of the city of New York. The management of their department by the commissioners of charities and correction was, in that respect, *wholly independent* of the common council. The department, in the care and management of the paupers and criminals confided to it, and in the care of boys whose custody for purposes of reformation devolves upon it by law, act *not as* agents of the municipal *corporation,* but as public officers, agents and servants of the public at large (*Maximilian* agt. *The Mayor,* 62 *N. Y.,* 160).

In establishing and maintaining a school ship for the reform of boys, they do not do any act nor perform any duty for the corporation, in what may be called its private character, in the management of property or rights voluntarily held by it for its own immediate profit and advantage as a corporation, though accruing ultimately to the benefit of the public. The defendant gets no benefit nor emolument as a corporation from the work furnished by plaintiffs; it was ordered by the department as the agent, not of the corporation, but of the state, in the discharge of its duty to a class needing its control for the purpose of reformation.

But the conclusions which establish that this was not work done for the corporation, through its agents, nor for the benefit of its property, and that the provisions of the charter as to making the contract, advertising, etc., do not apply, dispose of the question of ultimate liability of defendant against the view taken by plaintiffs in bringing this action. I am not able to see how an action can be maintained against the corporation for work not ordered by it or its agents, and not rendered upon or in respect of its corporate property, but done at the request of the public officers discharging the duties of the state, in this particular locality, towards the pauper and criminal classes. The case of *John B. Greene* agt. *The Mayor, etc.* (*Ct. Appeals, Mch.,* 1875 ; 60 *N. Y.*, 303), presents a different case. There a contract was directed to be made by the corporation, through its commissioners of public works, for laying certain water pipes, and the provisions of the charter did not apply because of the terms of the special act (*chap.* 213, *Laws of* 1871) authorizing the work. The corporation was liable, because the contract was made in its name and in respect of its property, and it was specially authorized by the act to raise the money to defray the expense.

In this case the disbursement of the moneys raised and appropriated for the department of charities and correction is made by the comptroller upon certificates of the department.

The appropriations for the department are made upon its annual estimates sent to the board of estimate and apportionment at least thirty days before the first of August, such estimates being for the ensuing year (*charter of* 1873, *sec.* 112). Where these sums are raised by tax and deposited in the city treasury they are subject to the drafts of the commissioners of public charities and correction, and the duty of the corporate officers of the city is only to pay out upon proper vouchers certificates or requisitions upon the amount estimated, appropriated and raised for each particular item of estimated expenditure the money in the treasury applicable thereto.

If there be *no* such money, *or if the appropriation be expended* upon the drafts of the department, no payment can be made. If *no* such appropriation has *ever been made*, upon what principle is the corporation liable to action, judgment and the seizure of its private property to satisfy the claim? In this case it clearly appears that the necessity for the repairs to the school ship arose suddenly and were not discovered until' *April,* 1873. There had certainly been no estimate made in the preceding year by the department for such contingency and forwarded by them to the board of apportionment (*charter, sec.* 112), nor any money raised applicable to the purpose. Without such proof the plaintiff fails to establish a case against the city, if, indeed, with such proof the action may be maintained. The city may be sued upon all its contracts and all corporate liabilities, and by the consolidation act of 1873, for all matters formerly of county charge, and within the jurisdiction, as such, of the board of supervisors of the county of New York; but the expense incurred by the department of charities and correction for these repairs does not fall within those terms. The money raised by the supervisors annually for the expenses of the department is in lieu of all taxes in the county for the relief and support of the poor thereof, and for the support and expenses of the county criminals (*act of* 1860, *chap.* 510, *sec.*

Lawrence agt. Mayor.

20). The sum to be raised is to be determined by the commissioners, and the supervisors had no authority to increase it (*same section*). Nor do the corporate officers possess the power to raise and apply to the purposes of the department other sum or sums for other objects than the commissioners request or are required by law, as I read the provisions of the charter (1873, *sec.* 112). But if not necessary at present to discuss the question whether the plaintiff's remedy is by action against the corporation or by proceedings against the corporate officer charged with the duty of payment in case a sum remains in the city treasury or was placed there for the purpose of paying for repairs to this vessel or to property under the charge of the commissioners, the judgment must be reversed and a new trial ordered, for the reason that it *does not appear in the case that there is a fund in the city treasury* applicable to the payment of the amount claimed by plaintiffs.

I concur : F. W. Loew.

Judgment reversed and new trial ordered, costs to abide event.

Daly, *C. J.* (dissenting in part) — I agree in the reversal of this judgment, upon the ground that the work was not one of those acts of immediate and imperative necessity which dispensed with a compliance with the provisions of the charter in respect to sealed proposals or to which it was never intended to apply (*McLaren* agt. *The Mayor*, 1 *Daly ; Smith* agt. *The Mayor*, 21 *How.*, 1 ; *Harlem Gas-light Co.* agt. *The Mayor, etc.*, 33 *N. Y.*, 329 ; *In the Matter of Dugro*, 50 *id.*, 517).

After the vessel had been raised upon the dry dock at a very trifling expense, which could be incurred without sealed proposals, as it would not amount to $1,000, there was no pressing emergency for the immediate beginning of the work, and where it involved the very large expense that was

incurred, over $23,000, the provision in the charter should have been complied with, which would have led only to a delay of about ten days.

The testimony of one of the plaintiffs that he could not tell what was required to be done until he had stripped the vessel did not establish that a contract could not have been made for a fixed sum for the necessary repair of the school ship upon sealed proposals, after receiving which the contract, as the charter provides, could be awarded to the lowest bidder; and it was shown by other experts that, though not usual, the estimates can be made and the repairing of one ship can be done by contract.

The answer of the witness Bell that the work was not advertised, because it was impossible, was not responsive to the question put to him. He should not have been allowed to add to his answer his conclusion that to advertise was impossible.

The defendants' counsel moved that this part of his answer be stricken out, but the judge said he would let it stand, which was equivalent to holding, as the judge gave no instruction to the jury that the jury might regard it as proper testimony in the case.

An exception was taken to what the judge said, and this testimony must be disregarded upon this appeal.

The case was one, in my judgment, in which the provision in the charter could and should have been complied with. It is upon this ground alone that I give my assent to the reversal of the judgment; for I do not agree that this was not work to be done for the city, within the meaning of the charter, for the reason that the school ship, and every thing connected with its control and management, was intrusted by law to the commissioners of charities and correction.

As I agree, for the reason above stated, that the judgment must be reversed, it is not necessary for me to set forth the reasons why I think that the city would be answerable for the repair of the vessel where the work, from the circum-

stances, was an act of immediate and imperative necessity, or to point out in what respect the decision of the court of appeals in *Maximilian* agt. *The Mayor* is distinguishable.

NOTE.— On the new trial before VAN HOESEN, J., the plaintiff proved the fact that prior to the performance of the plaintiffs' contract, and subsequently thereto, there were sufficient funds in the treasury of the defendants applicable to the payment of plaintiffs' claim; and after the work had been performed, on June 29, 1874, under a special act of the legislature, the appropriations made in 1873 for the year 1874 had been revised, and a large sum appropriated for the payment of contingencies. Judgment therefor was rendered for the whole amount in favor of the plaintiff (8 *Hun*, 247). On the first trial it had been conceded by the defendants that there was money sufficient to pay the bill of plaintiff, and no question on that point was argued before the general term. The fact that there neither was nor could be an appropriation seems to have been assumed without proof, and the court would seem to have gone outside of the record for its facts.—[ED.