THE STATE OF CALIFORNIA, (A. M. SIMPSON et al., Libelants.)

THE PORTLAND, (PACIFIC COAST S. S. Co., Libelants.)

*(Circuit Court of Appeals, Ninth Circuit.   January 19, 1892.)*

1. COLLISION—DUTY OF STEAMER ON MEETING SAIL-VESSEL.

On the morning of April 7, 1886, the steam-ship State of California was bound for San Francisco, and, when a short distance outside the heads, sighted the barkentine Portland, two points off her starboard bow, and near two miles distant, bound for the same place. No lights were observed on the barkentine, and the master of the steamer, supposing that the courses of the two vessels were nearly parallel, neither reversed his engine nor slackened his speed, but steamed on his course at the rate of 13 knots an hour. The night was dark, but clear, and the courses of the vessels were, in fact, nearly at a right angle. The barkentine was on the starboard tack, sailing close-hauled upon the wind, and continued her course until the steamer was within 300 yards of her, and apparently about to strike her amidships, when she was luffed into the wind, thus slackening her speed, and turning her bow to starboard and away from the steamer. The latter, without changing her course or abating her speed, undertook to steam across the bows of the barkentine, when they collided, the bow of the barkentine coming in contact with the steamer just abaft her beam, and both were seriously injured. The lights were burning on the barkentine, but the proof was not satisfactory that they were sufficient, and such as required by law. *Held*, that the steamer was in fault, on sighting the sail, in not reversing her engines, or slackening her speed, until the course of the barkentine could be certainly ascertained, and then it was her duty to keep out of the way; and therefore the damage occasioned by the collision ought to be divided.

2. FLARE-UP, WHEN SHOWN BY SAIL-VESSEL.

Section 4234 of the Revised Statutes, requiring a sail-vessel to show a torch on the quarter on which a steam-vessel is approaching her, is superseded by article 11 of the "International Regulations," so far as the high seas and the coast waters are concerned.

3. FINDINGS OF FACT BY THE CIRCUIT COURT.

The law limiting the supreme court, on an appeal in admiralty, to a review of the findings of the circuit court, on questions of law merely, does not apply to this court.

*(Syllabus by the Court.)*

Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Cross-libels between A. M. Simpson and others, owners of the barkentine Portland, and the Pacific Coast Steam-Ship Com-

pany, owners of the steam-ship State of California, for damages for a collision. The owners of the barkentine Portland appeal from a decree of the circuit court affirming a decree dismissing their libel, and awarding damages on the libel of the owners of the State of California. Reversed.

*Mr. E. W. McGraw*, for the Portland.

*Mr. George B. Merrill*, for the State of California.

Before DEADY, HANFORD, and HAWLEY, District Judges.

DEADY, District Judge, delivered the opinion of the court.

About 4 o'clock on the morning of April 7, 1886, a collision occurred between the steam-ship State of California and the barkentine Portland, a short distance outside the heads of the San Francisco bay.

The night was dark and clear, and the lights on Point Bonita, Point Reyes, and Fort Point were plainly visible.

Both vessels were bound in, and each was aware of her position. The wind was north-easterly. The course of the barkentine was about N. by W., and she was close-hauled on her starboard tack. The course of the steamer was about E. by N. From this it will be seen that the vessels were approaching each other at nearly a right angle. The steamer, while attempting to cross the bows of the barkentine, collided with her abaft her beam, on the starboard side. The barkentine was cut down from the bowsprit, below the water. In a few minutes after she was struck the vessel was water-logged, but, being loaded with lumber, she kept afloat, and was towed in.

The steamer had a hole stove in her side 8 or 10 feet in diameter, but by shifting the passengers and cargo, which consisted largely of wheat and flour, to port, she managed to get to her dock without injury thereto.

On July 26, 1886, A. M. Simpson and others, the owners of the barkentine, libeled the steamer on account of said collision; and on September 13, 1886, the owner of the steamer, the Pacific Coast Steam-Ship Company, libeled the barkentine for the same cause. On December 3, 1889, the libel in case of the steamer was dismissed, and the claimant had a decree for costs, and in the case of the barkentine the libelant had a decree for the damage suffered by the collision, and referring the case to a commissioner to find the amount thereof. On March 31, 1891, the commissioner reported the damage to the steamer at $8,880.30, and on July 23, 1891, the libelant had a decree for said damages, and for demurrage $3,076.05, with interest thereon, amounting in all to the sum of $15,165.65, with costs.

On December 11, 1889, the libelant appealed from the decree of the district court (46 Fed. Rep. 877) dismissing the libel in the case of the steamer, and on July 20, 1891, the circuit court affirmed said decree, and dismissed the libel. The material findings of the circuit court are to the effect that the lights on the steamer were in good condition, and were seen by the men on the barkentine half an hour before the collision; that the red light of the latter was not displayed, or was burning

dimly; that the sail of the Portland was seen by the master and lookout of the steamer 4 or 5 minutes before the collision, while she was about a mile and a half distant, and "the absence of the red light led the master of the steamer to believe that the two vessels were sailing on nearly the same course, and therefore he did not reverse his engine, or slacken speed;" that the steamer was running at the rate of 13 knots an hour, was 315 feet in length, and could have been stopped in 5 times her length; that if, on first sighting the Portland, the engines of the California had been reversed, the collision would not have occurred, but she neither reversed her engines, slackened her speed, nor changed her course; that the Portland had a torch on board, but did not exhibit it, nor was it satisfactorily shown that the lights of the Portland were such as were required by the United States Statutes; and that, about 5 minutes before the collision, the Portland was, by order of the mate, luffed into the wind, "thereby arresting her headway, and throwing her more into the track of the steamer;" and concluded that the collision resulted from the neglect of the Portland to show a proper and sufficient red light."

Upon these findings the steamer must be held in serious fault, in not reversing her engines or slackening her speed when the lookout reported "a sail on the starboard bow." The master had no right to suppose that the vessel was on the same course with the steamer, and therefore there was no danger of collision. Seeing no light at all, he had no right to indulge in any supposition. It was his duty to stop at once, or slacken his speed, so as to simply hold his way until the course of the barkentine was ascertained.

*The Hermann,* 4 Blatchf. 441; *Steam-Ship Co.* v. *Calderwood,* 19 How. 245; *Louisiana* v. *Fisher,* 21 How. 5; *The Illinois,* 5 Blatchf. 258; *Ping-On* v. *Blethen,* 11 Fed. Rep. 607; *The Ancon,* 8 Sawy. 334, 17 Fed. Rep. 742.

The International Regulations are also decisive of the question. Articles 17 and 18 are as follows:

"Art. 17. If two ships, one of which is a sailing ship and the other a steam-ship, are proceeding in such direction as to involve a risk of collision, the steam-ship shall keep out of the way of the sailing ship. Art. 18. Every steam-ship, when approaching another ship so as to involve risk of collision, shall slacken her speed, or stop and reverse, if necessary." 23 St. p. 441.

The barkentine was some two points off the starboard bow of the steamer, and might well be, as she was, sailing on a course convergent to that of the steamer, in which case the risk of collision was certainly involved.

It is claimed by the appellant that, on the facts found, there should have been a division of the damages on the ground of the manifest fault of the steamer.

It is proper to state here that we do not consider the act of February 16, 1875, (Supp. Rev. St. 135,) which makes the finding of facts of the circuit court conclusive upon the supreme court, applicable to an appeal from a circuit court to this court.

The act organizing this court (section 6) gives it "appellate jurisdiction to review by appeal" all cases in admiralty,—to review them by appeal, unqualifiedly, in which the case is tried *de novo*, on the evidence, and not upon mere question of law.

The question is only material in the case of a decree given in a circuit court, on appeal from a district court, prior to March 3, 1891, the date of the act organizing this court; as since that time no appeal is allowed from the district to the circuit courts. Section 4. So the provision in section 11 of the act concerning "methods and systems of review" is prospective, and does not apply to appeals in admiralty from decrees pronounced under the old law.

It was found in the circuit court that the barkentine did not display a torch-light, as provided in section 4234 of the Revised Statutes, which requires such light to be shown by a sail-vessel on the approach of a steam-vessel, on whatever quarter it might be approaching. But this section is superseded, as to vessels on the high seas and coast waters of the United States, by article 11 of the International Regulations, which reads:

"A ship which is being overtaken by another shall show from her stern to such last-mentioned ship a white light, or a flare-up light." *The Algiers*, 38 Fed. Rep. 526; *The Excelsior*, 33 Fed. Rep. 555.

The barkentine was in the coast waters of the United States, and was not being overtaken by the steamer.

The case of the barkentine comes here direct from the district court, on the evidence, which makes a case more favorable for her than the findings in the circuit court.

For instance, the circuit court found that, 5 minutes before the collision, the barkentine was luffed up into the wind, whereby her headway was stopped, and she was thrown more into the track of the steamer.

The mate, Peterson, testifies that, about 5 minutes before the collision, he gave the order to put the vessel close to the wind.

It is possible he is mistaken about the time, and that the order was given less than 5 minutes before the collision. It was given when the steam-ship was about 300 yards distant from the barkentine, and apparently about to strike her amid-ships; but the longer before the collision the better for the case of the barkentine. The putting her more against the wind had a tendency to stop her headway, and probably did reduce her speed to 2 or 3 miles an hour. At the moment of the collision her sails were aback or fluttering. This slackening of speed gave the steamer more time to cross her bows, and reduce the force of the impact, when they came together; and so far from the luffing throwing the barkentine more into the track of the steamer, the contrary is true. Her bow swung to the starboard,—to the right,—and if she had swung half round in the same direction she would have been parallel to the steamer, and no collision would have occurred. It was the general duty of the barkentine to hold her course; but when the mate saw the steamer was crossing her bow, and likely to collide with the barkentine, it was his right and duty

to do whatever seemed most likely to avert or diminish the impending calamity.    Articles 23, 24, 23 St. p. 442.

Notwithstanding, the steamer forged ahead on her course, at the rate of 13 knots an hour, when a slight deviation to port would have sent her clear of the barkentine, and prevented the collision.

As to the lights on the barkentine, the weight of the testimony is to the effect that they were in place and burning; but the testimony is not satisfactory as to their condition or quality. The libelants were practically challenged, on the hearing, to bring the red light into court for inspection. They failed to do so, and the reasonable inference is that it would have been found insufficient.

The case is one of mutual fault, and the damages must be divided, by requiring half the difference of the respective losses, if any, to be paid by the one sustaining the lesser loss to the other.    *The Oregon,* 14 Sawy. 466, 42 Fed. Rep. 78, and 45 Fed. Rep. 62.

The decision of this court is that, in the case of the steamer State of California (A. M. Simpson and others, libelants) the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with this opinion; and in the case of the barkentine (the Pacific Coast Steam-Ship Company, libelants) the decree of the district court is reversed, and the cause is remanded to that court, with direction to dismiss the libel, and enter a decree in favor of the claimants for costs.

### MOTION FOR A MODIFICATION OF THE DECREE.

#### (January 25, 1892.)

DEADY, District Judge.    The order for a decree is modified as follows: The decree of this court will be that the decrees in the cases of *The Portland* and *The State of California* are both reversed, and that they both be remanded to the district court, and there consolidated and tried as one case, upon the question of the amount of damage sustained by the Portland and State of California, respectively, by reason of the collision; and that, if either is shown to have sustained more damage than the other, the lesser sum, with the costs of libelant in such case, shall be deducted from the greater sum, with costs, and the party sustaining the greater loss shall have a decree for the one-half of the remainder.