Gibson et al. v. The Alice Clark.

(District Court, S. D. Georgia, E. D. April Term, 1889.)

Salvage—Compensation.

The steam-boat C., laden with compressed cotton to the value of $30,000, was going down the Savannah river, when her cargo took fire. She gave distress signals, which were heard by another steamer, similarly laden, (the E.,) which overtook her. The C. was moored in a swamp, and was throwing the cotton overboard. The evidence on behalf of the E. tended to show that the C. then verbally requested assistance of the E.'s crew, which was rendered by throwing water with a hose, and by means of buckets. The cargo was saved, with but little loss; and, while the crew of the C. could have saved it alone, the E. rendered valuable assistance. The C.'s evidence tended to show that she did not ask the E.'s help, but whistled to arouse her own crew, and would have refused assistance had she understood it to be other than gratuitous. The E. was only detained an hour, and her exertions neither called for great skill nor exposed her to peril. *Held* that, while she was entitled to salvage, the amount should not exceed $400.

In Admiralty. Libel for salvage.

J. R. Saussy, for libelants.

Denmark, Adams & Adams, for respondents.

Speer, J. The proceedings under consideration were instituted by the owner, officers, and crew of the steam-boat Ethel against the steam-boat Alice Clark, her engines, boilers, tackle, etc., and her cargo, to recover

compensation for salvage services alleged to have been performed on the 28th day of May, 1887, in putting out a fire which it is alleged was rapidly destroying the Alice Clark and the large values in cotton with which she was laden. The steam-boats in question are both engaged in plying between Augusta and intervening landings. Amid the positive conflict of evidence, usual in cases of this character, this much seems clearly apparent: On Saturday, May 28, 1887, when the Ethel was on the down-trip to Savannah, and about 85 miles from that city, with the Alice Clark a short distance ahead, on the same trip, the master and crew of the Ethel heard signals of distress sounded by the whistle of the Alice Clark. The Ethel, in response to the signals, increased her speed, and overtook the Alice Clark about a mile lower down the river, when it was discovered that the cargo of the latter was on fire. The cargo was of compressed cotton, piled on the deck of the Clark in the usual manner. The Clark had been run into the bank, had thrown out lines, and was moored to trees in the swamp. The crew of the Clark were attempting to throw off the cotton and extinguish the fire, which had made considerable headway. It is in serious dispute whether there was any verbal demand made on the crew of the Ethel by the master of the Alice Clark for assistance other than that afforded by the signals of distress, but it is evident that the crew of the Ethel was eager to render assistance. The boat rounded up alongside the Alice Clark, taking a position very near her, and a stream of water from the hose of the Ethel was promptly thrown on the burning cotton. The crew of the Ethel was also equipped with water buckets, which likewise were used for the extinguishment of the fire. By the joint efforts of both crews the fire was extinguished, and to do this it was found necessary to throw 57 bales of cotton overboard. The Ethel was not delayed more than an hour as a result of these occurrences, and at the expiration of that time the steamers proceeded in company to Savannah. It is insisted the libelants that the pumps of the Clark would not work; that one of them was so surrounded by cotton that it could not be reached; that the hose was useless; that the crew were exhausted and demoralized; and that several of them, alarmed at what seemed the inevitable destruction of their boat, had betaken themselves to the forest which fringed the shores of the Savannah. On the other hand, it is asserted with equal positiveness by the officers and crew of the Clark that, while notes of distress were sounded upon the steam-whistle, it was done simply to arouse the crew of the latter craft, and not to invoke the assistance of the Ethel; that the hose and water buckets of the Clark, brought into immediate requisition, extinguished the fire, and that they were engaged in throwing over the bales of cotton which had been exposed to the fire, with a view of passing it under the wheel of the Clark, which was kept in motion for that purpose, to "baptize" them thoroughly, and thus to extinguish any spark of fire which might linger in the fiber of the cotton; that the services of the Ethel were neither needed nor requested, and would have been refused, had it been deemed that they were prompted by mercenary motives, and not by a spirit of courtesy and kindness.

The ascertained facts, however, as hereinbefore shown, warrant us, under repeated announcements of the courts, to declare these salvage services. *The Blackwell,* 10 Wall. 11; *The Gler,* 31 Fed. Rep. 425; *The Connemara,* 108 U. S. 357, 2 Sup. Ct. Rep. 754. Saving a ship from imminent danger of destruction by fire is as much a salvage service as saving her from the perils of the sea. To co-operate voluntarily in extinguishing the fire, when not under legal obligation so to do, is meritorious service; and, even though the Clark might, and doubtless would have been saved without the co-operation of the Ethel, yet the services of the Ethel contributed substantially to that result; and it is in accordance with the law and with public policy that the salvors should be rewarded, not merely *pro opere et labore,* but as a reward given for perilous services voluntarily rendered,—as an inducement to seamen, and others, to embark in such undertakings to save life and property. There are, however, several considerations specified as important by authoritative decisions which will make the allowance for the salvage services to the Clark and her cargo far less in amount than the libelants demand. The labor expended was trifling; the skill exerted not at all extraordinary; the risk incurred by the salvors, with due precaution on their part, not great. The value of property saved was large,—some $30,000,—but it must be remembered that the fire could in all probability have been readily extinguished by throwing the bales of compressed cotton into the river, with little effort and with small injury to the cotton, the compressed bales being almost impervious to the water. Besides, the court does not credit the evidence which would produce the impression that the crew of the Clark was totally demoralized. They rendered valuable and effective services in the extinguishment of the fire. The whole delay of the Ethel was not more than an hour. On the whole, the court "willingly, and not grudgingly," (see the opinion of Judge HUGHES, *The Minot,* 30 Fed. Rep. 212,) allows the sum of $400 for salvage services, to be assessed between the boat and the cargo in proportion to their respective values as agreed upon. Of this sum we award $150 to the owners of the Ethel, $50 to the master and pilot,—the same person,—$25 to the mate and to each engineer, and to each other member of the crew,—15 in number,— $8.33⅓. The costs are assessed against the Alice Clark and cargo, in proportion to their assessed values, respectively.