### THE BRANDYWINE.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1898.)

No. 258.

1. ADMIRALTY APPEALS—FINDINGS OF COURT BELOW.

The circuit courts of appeals, in reviewing admiralty cases, are not limited to questions of law; but it is the settled practice of these courts to give great weight to the conclusions of fact by the trial judge, unless they are based on evidence manifestly insufficient; and in cases of conflicting testimony, apparently of equal merit, to follow the conclusions reached below.

2. SALVAGE—AMOUNT OF COMPENSATION.

An award of $500 upon a salved value of $1,522.50 *held* excessive for services rendered by the first to arrive and most efficient of a number of tugs which pumped water into a burning barge; the time occupied being about 6½ hours, and there being no danger to life or property. The award should be reduced on appeal to $250.

Appeal from the District Court of the United States for the Eastern District of Virginia.

Robert M. Hughes, for appellant.

T. S. Garnett, for appellee.

SIMONTON, Circuit Judge. This is an appeal from a decree of the district court of the United States for the Eastern district of Virginia. It is a case of salvage. The barge Brandywine, on the

morning of 20th April, 1897, was lying at the pier of Lambert's Point, near Norfolk. She was a large barge, some 190 feet in length, drawing when loaded 23½ feet, engaged in carrying coal, and with a capacity of about 1,800 tons of coal. She had two decks. She had no propelling power of her own, but was equipped with an engine used in the hoisting apparatus. This engine was forward in the between decks, in the forward part of the deck, in an engine room the whole width of the vessel, about 30 feet from the stem, back where the bulkhead comes. The engine room was entered by what was called the "companion way hatch," not the "fore hatch." The crew of the barge consisted of four men. Between 4 and 5 o'clock of this morning, the master of the barge was aroused from sleep by the call of a watchman on the pier that the barge was on fire. Calling his men, he got out, and found the fire was in the engine room, and getting some assistance from the crew of a four-mast schooner near, he began to get the fire hose from the pier aboard his barge, and to put it in the hatch of the companion way. Just at that time, the tug, Emma Kate Ross, which was lying some distance off the pier with scows in tow, discovered the fire, and leaving her scows at anchor, went at once to the Brandywine. Placing her bow opposite the bow of the barge, she put on two streams of water, one from a pipe on her own bow, the other from the deck of a pile driver alongside of her. Her deck was 10 feet below the deck of the barge, and the deck of the pile driver about on a level with the barge's deck. The Emma Kate Ross is a large tug, equipped with a powerful fire apparatus, her pump having the capacity of 6,000 gallons a minute. With these two streams she played water on the barge, chiefly on her deck and bow. After the Ross had been at the barge about a half or three-quarters of an hour, another tug, the Little Nell, came to the assistance of the latter, and began pumping water into her, followed in rapid succession by the Pocahontas, Louisa, Alvah Clark, and E. B. McCauly, all tugs more or less suitably equipped for extinguishing fires, but none as well equipped as the Ross. For some time no men from the Ross went aboard the barge. But, after men from one or more of the other tugs boarded the barge, the master and crew of the Ross did so also. The testimony is very conflicting as to the amount and effectiveness of the assistance rendered to the barge by the Emma Kate Ross. She stood by the barge as long as she was at the pier, pumping water on and into her. About 9 o'clock two of the other tugs towed her away to some flats near. The Ross accompanied them, and, as soon as they reached the flats, rendered efficient service in turning the head of the barge to the wind. But the witnesses differ very much in their testimony upon the point who put out the fire. The court below, although no specific findings of fact are given, evidently solved this conflict in favor of the Emma K. Ross, by awarding her $500 as a salvage award.

This court is not limited, as the supreme court was under act of 1875, to the review of questions of law only in an admiralty appeal. It can also review the findings of facts. The Havilah, 1 U. S. App. 1, 1 C. C. A. 77, and 48 Fed. 684; The State of California, 7 U. S. App. 20, 1 C. C. A. 224, and 49 Fed. 172; The Philadelphian, 21 U. S. App.

90, 9 C. C. A. 54, and 60 Fed. 423. Yet it is now the settled practice of this court to give great weight to the conclusions of fact by the trial judge, unless they are based upon evidence manifestly insufficient, and in cases of conflicting testimony, apparently of equal merit, to follow the conclusions reached below. The Wilhelm, 16 U. S. App. 356, 8 C. C. A. 72, and 59 Fed. 169; The Alejando, 15 U. S. App. 98, 6 C. C. A. 54, and 56 Fed. 621; The Lucy, 20 C. C. A. 660, 74 Fed. 572. In subsequent discussion of this case, we assume that the services rendered by the Emma K. Ross were salvage services of meritorious character; and the only remaining question is as to the amount of the award.

The barge Brandywine, after the fire was extinguished, was sold at auction, her owners being present, and was bought by a third person for $1,522.50. This is the gross value of the salved property to her owner, and the award must be ascertained with this sum as a factor. As has been seen, the district court awarded to the Emma K. Ross alone $500, a third of this sum. The services of the other tugs do not seem to have entered into the estimate. We think this allowance excessive. The services of the Emma K. Ross had some of the elements of salvage service,—promptness and efficiency. They had no element of danger to life or property. Nor were they rendered to a vessel hopeless of aid from any other quarter than the salving vessel. Nor were they rendered alone. The other tugs were with her, rendering aid, if not as effective as that rendered by the Ross, certainly contributing materially in making her assistance successful. The capacity and efficiency of those other tugs are demonstrated by the fact that after the Emma K. Ross had left the barge, the fire being absolutely to all appearance subdued, it broke out afresh, and they were without her aid able to extinguish it entirely. For their services their owners are content with $50 each. The Emma K. Ross was at work from 4:30 a. m. to 11 a. m.; the Little Nell from about 5 a. m. to about 3 p. m.; and the other tugs left about an hour before her. The cases in this circuit of salvage for rescue from fire are very few. The Alice Minot, 30 Fed. 212, was a case in which a cotton vessel afire was towed by a tug into deep water, away from her wharf, and was there sunk by her crew who scuttled her. The court of the Eastern district of Virginia awarded the tug for salvage $500. In that case the value of the property saved was $72,000. In The Cherokee, 31 Fed. 167, a steamship of the Clyde Line, with a full cargo, was found to be afire very soon after leaving her dock. The tug Monarch went to her rescue, began pumping on her with powerful pumps, and towed her afire to her wharf. Then the fire department took charge of her, and extinguished the flames. The district court for the district of South Carolina awarded $850 for the salvage service. The property at peril was valued at $272,500. The S. B. Baker, 23 Fed. 109, decided by the district court for the Southern district of New York, is a case which somewhat resembles the case at bar. A fire broke out during a westerly gale among the cotton bales which composed the cargo of the lighter Baker. Upon a signal from the superintendent of the wharves, a tug towed her out, with her burning cargo, from the slip into the river, and played upon the fire with her small hose un-

til the arrival of two city fire department tugs. The tug then towed the three vessels (the lighter and two steam fire department tugs) to a place convenient for taking out the burning cotton. The value of the cotton saved was $20,000; of the lighter, $3,000; and of the tug, $14,000. Held, that $750 was a proper salvage award. This award was reduced on appeal in the circuit court to $350. It is true that new evidence in the higher court influenced this reduction. It is evident, however, that the court thought that the award of the district court, without this new evidence, was high enough. See, also, The Alice Clark, 39 Fed. 621. In the light of these cases, and taking into consideration the number of tugs actively engaged in the same work and at the same time with the Emma K. Ross, we think that $250 is a liberal reward to her for her salvage services on that occasion. Let the case be remanded to the district court, with instruction to modify its decree in reducing the salvage award to this sum of $250.