## THE OSCAR B.

### (Circuit Court of Appeals, Ninth Circuit. February 2, 1903.)

#### No. 800.

1. ADMIRALTY—REVIEW ON APPEAL—FINDINGS OF FACT.
   While the Circuit Court of Appeals is not limited to the review of questions of law, only, in admiralty appeals, it is the settled practice to give great weight to the findings of fact by the trial judge, and not to disturb such findings, in cases of conflicting testimony, unless they are found to be clearly against the weight of evidence.

2. TUG WITH TOW—INJURY TO FISHING NET—LIABILITY.
   A tug with a tow, passing through a channel in which there were a number of boats fishing with seines, *held* not liable for an injury to a seine from becoming entangled with the tow, where she took a middle course, and was not shown to have been negligently navigated, but it appeared that the seine had caught on the rocks, and for that reason did

not drift with the tide, as usual, which fact was not known to the master of the tug until too late to prevent the injury.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

Edward W. Franklin, for appellant.
William Martin, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The appellant filed a libel against the tugboat Oscar B. for damages caused to the purse seine of the appellant by the tugboat and its tow on or about the 25th day of July, 1900, in the waters off Iceberg Point, San Juan county, Wash. The appellee denied generally the charges of the libel, and, upon testimony being taken, the court entered a decree in favor of the appellee. From this decree the cause is brought to this court on appeal.

It was alleged in the libel that the appellant was at the time mentioned a fisherman by occupation, and on the morning of July 25, 1900, was, with his crew, engaged in fishing with a purse seine off Iceberg Point, on the coast of Washington; that, while so fishing, the said tugboat, being then engaged in towing a pile driver and some piles, did, by reason of the gross neglect of the master and crew of said tugboat in failing to keep any lookout, and by the lack of seamanship in handling said tugboat and her tow, cause said pile driver and piles to run afoul of and cut in pieces said purse seine, thereby causing the loss of the fish in the seine; that the appellant and his crew were compelled to remain on shore for four days, while engaged in repairing and putting together the said seine; that by reason of the loss of fish in the seine at the time of collision, and by the loss of time required to repair the same, the appellant was damaged in the sum of $350.

It was admitted by the appellee in his answer that the meshes of the appellant's seine were caught in certain of the piles being towed by the appellee, but denied that damages to the extent of more than $20 resulted therefrom, and further denied that such damage was caused by the negligence or carelessness of the appellee. As matter of defense it was alleged that appellant did not have a sufficient number of men with him to properly handle the seine; that the said seine became caught and fastened upon the rocks at the bottom of the ocean so that it could not be released and drift with the tide in the usual manner; that the appellee was navigating his tugboat and tow with all due care while approaching and passing said point, and was not warned of the fact that appellant's seine had become fastened to the rocks; that he believed that the seine would drift with the tide, and made due allowance for the same in selecting his course; that, by reason of the nondrifting of the seine, it became entangled in the piles of the tow as they passed, the piles being carried by the tide in the direction of the seine; that therefore the appellant's negligence in allowing the seine to be caught, and in not warning the appellee of the condition, was the entire cause of the damage resulting.

It appears from the evidence that the tugboat, with a pile driver and four sections of piles in tow, started from Richardson to Kelly's Ledge, passing Iceberg Point on the way; that the distance between Iceberg Point and Hall Island, almost opposite, was about 1¼ miles, and the course of the tugboat lay between these points; that various parties with boats and seines were on either side of the course, lying in wait for the fish to run; that the appellant's net was placed the farthest out; and that a strong tide was running toward it at the time of collision.

On the appellant's behalf it was testified that, while the seine may have been caught on the rocks in places, it did not interfere with the handling of it, and that they were pulling the net in, and could have completed the operation without difficulty if the tugboat had kept farther away; that, as soon as they could see that there was danger of collision, they waved their hats and shouted to inform those on the tugboat of the danger.

On the other hand, it was testified for the appellee that the tugboat was kept in the middle of the course, was about a quarter of a mile distant when abreast of the same, and, with a tow between 1,100 and 1,200 feet long, would have swung entirely clear of the seine, had the seine been drifting with the tide; that the captain of the tugboat was in the pilot house all the time, and saw no signal given and received no warning that the net was not free until after coming abreast of the net; that he then sheered his boat off, and, upon finding that the tow was not going to swing clear of the net, he stopped the boat, in order to prevent the carrying of the net along and tearing it; that the fishermen then disentangled the net from the piles, and the voyage was proceeded with.

With regard to the damage sustained, appellant testified that the collision occurred on the 25th day of July; that the fish were then running, and, from the indications of the fish jumping, it was estimated that there were from one to two hundred salmon in the net at the time of the collision; and that there would undoubtedly have been fish caught upon the four succeeding days, had the net been in condition to use.

The appellee introduced evidence tending to show that the collision occurred on the 19th of July, from entries in a book in which a record of the work done by the tugboat was kept. On the 19th the entry was, "Took pile driver, four sections of piles, to Kelly's Ledge, and went for water," while on the 25th there was no record of taking any piles, but merely the pile driver to Anacortes for water. There was also corroborating oral testimony tending to show that the collision occurred on the 19th of July. With respect to the time when fishing commenced at this point, William Stewart, a buyer of fish for the cannery of Myer & Co. at that place, testified that he purchased the catch each day from the majority of the fishermen there—the appellant among them—and that he kept a record of each day's catch in a book which he produced. This book contained an entry showing a purchase of fish on July 29th, but he testified that the fish were not running to any extent that season at the point in question before July 30th, and no fish, to amount to anything,

were purchased until that day. It was admitted by appellant that only one fish was actually seen jumping in his net, by himself or his crew, on the day of the collision.

From this testimony the court below reached the conclusion that by a fair preponderance of evidence it was shown that the run of salmon for the season had not commenced when the net was injured, and did not commence until after the four days had elapsed in which the net was mended; that the only loss suffered by the appellant was, therefore, the time of his crew engaged in mending the net instead of fishing, and that under the circumstances this could not positively be determined to be a pecuniary loss; that the damage to the same resulted from a combination of unfavorable circumstances beyond the control of the captain of the tugboat, and not involving any negligence or fault on the part of the boat or her captain.

"The libelant's seine had become entangled on the rocks at the bottom, or was snagged so that it did not drift freely with the tide, and, when the steamer with her tow came out beyond Iceberg Point so as to meet the force of the incoming tide, the raft necessarily drifted towards the seine and became entangled. There is no arbitrary rule requiring a tugboat to avoid a fishnet in a fairway. If the steamer injures the net, she will be liable for damages if the injury was wanton or caused by negligence; otherwise she will not be liable."

While this court is not limited to the review of questions of law, only, in admiralty appeals, it is nevertheless the settled practice to give great weight to the findings of fact by the trial judge, and not to disturb such findings, in cases of conflicting testimony, unless they are found to be clearly against the weight of the evidence. The Alijandro, 56 Fed. 621, 6 C. C. A. 54; The Brandywine, 87 Fed. 652, 31 C. C. A. 187. The court has read the entire testimony in this case, and has reached the conclusion that the negligence of the appellee has not been established. The tugboat, with its tow, was being navigated in the usual course, with due regard to the various fishing boats on either side. Had the appellant's seine not been snagged or caught on the rocks, the evidence shows that it would not have been injured by the tow.

The preponderance of evidence shows that the warning given by the appellant as to the seine's condition was not given soon enough; that, when it was received by the captain of the tugboat, he used all possible care and diligence to prevent injury to the same, but that the force of the incoming tide at this point carried the tow against it. A tug is only bound to use reasonable care and skill, and, when employing that degree of care and skill, is not liable for the sudden sheering of the tow. The Stranger, 1 Brown, Adm. 281, Fed. Cas. No. 13,525; The Lady Wimett, 99 Fed. 1004, 40 C. C. A. 212.

The decree of the District Court is affirmed.