PERRIAM v. PACIFIC COAST CO. et al. (OREGON R. & NAV. CO. et al., Interveners).

(Circuit Court of Appeals, Ninth Circuit.   October 3, 1904.)

No. 1,028.

1. ADMIRALTY—APPEAL—PARTIES.

Sureties on a stipulation in admiralty for the release of a libeled vessel do not become parties to the suit in such sense as to require that they be joined in an appeal by the claimant from the decree entered therein, although such decree is joint in form against the claimant and stipulators, unless some extraneous question has arisen in the suit involving their rights or obligations.

2. SAME—REVIEW ON APPEAL—FINDINGS OF FACT.

The findings of fact of the trial court in an admiralty case, made upon conflicting testimony, will not be disturbed on appeal unless they are found to be clearly against the weight of evidence.

3. SAME—AMOUNT OF SALVAGE AWARD.

The amount of the award in a salvage case, which rests largely in the discretion of the trial court, will not be readjusted in an appellate court where there has been no mistake of fact or application of an unwarranted rule of compensation.

4. SALVAGE—AWARD ON ACCOUNT OF PENDING FREIGHT—UNFINISHED VOYAGE.

In fixing the award for the salvage of a vessel while proceeding on a voyage with cargo, the freight will be treated as divisible, and the amount to be reckoned in the value of the salved property is the proportion thereof which has been actually earned at the time of the salvage service.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

In Admiralty.

On November 25, 1901, the British ship Nelson, of 1,310 tons gross and 1,247 tons net register, with a crew of 23, including officers, carrying a cargo of wheat of the value of $35,000, with pending freight of $15,000, sailed from the mouth of the Columbia river, Or., on a voyage to the United Kingdom. She had proceeded a little more than 100 miles off the coast of Oregon when she encountered heavy weather and gales of unusual violence, which so distressed her by damage to her rigging, gear, and sails, and by causing her cargo to list to starboard, that she was compelled to abandon her course, and return to some port of refuge for repairs and to restow her cargo so as to bring her to an even keel. She returned to the mouth of the Columbia river for the purpose of entering the port of Astoria. She arrived off the mouth of the river about December 1st. On the morning of December 3d the tug Wallula, then plying off the bar, observed her signals, and spoke her. The Nelson was then heading inshore. The morning was squally, with fog and occasional rain. The ship requested assistance to be towed into Astoria. The tug answered that the bar was impassable, and that it would be best for the ship to go to Puget Sound or San Francisco. The ship replied that it had no sails other than those spread, which were the fore topmast staysail, the fore lower topsail, the main lower topsail, and lower mizzen topsail and mizzen staysail. The tug declined to undertake, alone, to take the ship in tow, but replied that she would go toward Astoria and secure assistance. She returned inward, and spoke the tug Tatoosh. Both tugs then went out to the Nelson. At about 10 o'clock in the morning of December 3d the tugs made fast to the ship. The wind had then veered more to the

¶ 2. See Admiralty, vol. 1, Cent. Dig. § 770.

¶ 3. Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

south, the weather was squally, and the barometer was falling. The Tatoosh laid her hawser on the lee side of the ship, and the Wallula laid hers on the weather side, and from that time until 3 o'clock in the afternoon they towed the ship in an attempt to get over the Columbia river bar. During this time the wind arose to stiff gales, and by 3 o'clock it had veered to northerly of west. The force of the wind and the sea became so great that it was impossible for the tugs to hold the ship to the wind without making stern-way. They were then about three miles off shore. The ship was rolling and pitching, and the strain on the hawsers was severe. The Wallula, having depleted her coal supply, was compelled to slip her hawser and return to port. The Tatoosh then shaped her course northwest by west-westerly, to get the wind on the quarter, and signaled the ship to make sail and follow. The course so adopted was for the track of vessels plying coastwise between Puget Sound and San Francisco. The wind veered still further to the west, and was blowing with great force, and the weather was rainy, and the sea choppy and heavy. The ship signaled that her sails were all split and blown away, and she did not comply with the tug's signal to set her sails in accordance with the new course. At 10 o'clock on the night of December 3d the hawser of the Tatoosh parted. Thereafter the tug cruised for the ship, but was unable to sight her. The tug made efforts to ship her trailing hawser, but the seas were so heavy that she was unable to do so and the hawser was cut. On the following morning the Tatoosh, being unable to find the ship, returned toward Astoria, arriving there about 5 p. m. on that day. On arriving at Astoria the captain of the Tatoosh sent to his owners at Seattle the following telegram: "Ship Nelson broke adrift from me ten last night, fifteen miles west Shoalwater Bay. Could not find her. Probably go Sound. Salvage." The ship, after the hawser parted, set all hands to make sail, and proceeded up the coast about 25 miles off shore, and flying signals of distress. When about 35 miles southeast of Carroll's Island she spoke the steamship Walla Walla, a passenger steamer bound for Puget Sound, and requested the steamship to give her a tow into Puget Sound. At that time some of the Nelson's sails were blown away, others were so injured as to be of little use, her lifeboats and other boats were smashed, her rigging was badly torn, and she had a list of 22 inches to the starboard, and the weather was thick and the barometer falling. At about half past 3 o'clock on the afternoon of December 4th the steamship made fast her hawser to the Nelson and took her in tow on her course to Puget Sound. She arrived with her tow at Port Townsend in the afternoon of December 5th. On the libels of the Pacific Coast Company and the Pacific Coast Steamship Company, respectively the charterer and the owner of the Walla Walla, the Nelson was arrested, and released on a bond. The tugs Tatoosh and Wallula belonged to the Puget Sound Tugboat Company, but at this time were chartered to the Oregon Railroad & Navigation Company under a charter party which provided that the owner and the charterer should share jointly in all salvage awards earned by the tugs. These two corporations intervened, and sought awards for services which the tugs had rendered to the ship, and asserted that the Pacific Coast Company and the Pacific Coast Steamship Company were not primary salvors, and that, had it not been for the services of the tugs, the Nelson would have become a total loss. Capt. Perriam, claimant of the ship, filed a cross-libel against the Oregon Railroad & Navigation Company and the Puget Sound Tugboat Company, seeking to recover damages in the sum of the value of the services of the steamship Walla Walla, "for the recovery of which suit is pending as aforesaid, and the amount of which has not yet been determined by the court, less the reasonable value of the towage service performed by said tug Tatoosh under said contract, and in the further sum of the amount of costs and expenses of said suit of the Walla Walla against said ship and cargo." On the trial in the District Court of the issues involved in these pleadings the cross-libel of Capt. Perriam, the claimant, was by the court dismissed on the ground that the allegations thereof were not sustained by the evidence. The decree of the court awarded to the Pacific Coast Company for the services of the steamship $15,000, to her master, officers, and crew $5,200, and to the intervening libelants, for the services of the tug-

boat Tatoosh, $2,000, and for the services of the tug Wallula $500. The District Court in the decree made the finding that the steamship Walla Walla, her master, officers, and crew, "performed a highly meritorious salvage service, whereby the ship Nelson, her tackle, apparel, furniture, and cargo, were saved from total loss on the 4th day of December, 1901, while she was in a helpless condition, and the lives of her officers and crew were greatly imperiled," and that "said tugboats, on the 3d day of December, 1901, at the request of the master of the ship Nelson, performed towage services for the said ship Nelson at a time when she was in distress and danger." In the opinion filed by the trial court it was said: "There is conflict in the testimony as to some of the important facts. The testimony of the captain of the ship Nelson and the witnesses on his side is in a large measure discredited by the manifest disposition of said witnesses to prevaricate and minimize the peril from which they were rescued, and the exertions made in their behalf by the salvors. I am convinced by the evidence that the steamship Walla Walla, her captain, officers, and crew, rescued the ship Nelson from extraordinary peril and probable destruction, and, considering that the steamship Walla Walla was a passenger ship, having on board a large number of passengers and a valuable cargo, and that she was not seeking employment as a towboat, the services rendered were of a high order of merit, and entitled to be compensated on a scale of liberality. It is my opinion that the Wallula and the Tatoosh did not earn salvage, because their efforts did not place the ship Nelson in any better position or condition than she was when they first went to her assistance; but they did not fail to make the utmost endeavors to rescue the ship, and committed no fault which in any way contributed to increase the peril to which the Nelson was exposed. The lives of the men on board the steam tugs were placed at risk, as well as the property in their charge. Fuel was consumed, and a towline was sacrificed, and more or less damage was done to the steam tugs in the efforts to tow the ship at the request of her captain; and for this compensation should be awarded, not as salvage, but for extraordinary towage."

William H. Gorham and Gorham, Brown & Gorham, for appellant.

Piles, Donworth & Howe and C. H. Farrell, for appellees Pacific Coast Co. and Andrew L. Hall.

W. W. Cotton and W. C. Bristol, for appellees Oregon R. & Nav. Co. and Puget Sound Tugboat Co.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Upon the argument the appellees moved to dismiss the appeal on the ground that it was taken by the appellant alone from a judgment rendered against him and the United States Fidelity & Guaranty Company jointly for a specific sum of money, and that no permission of the court was granted the appellant to appeal therefrom alone, nor was there any severance and summons. The appellee, in advancing the motion, relies on the doctrine that when a decree is entered against two persons jointly one of them cannot appeal therefrom unless he serve the other with notice of his appeal and the other refuse to join therein. The appellant, on the other hand, contends that the sureties of a claimant do not become parties to the record with a right to be heard, and that, therefore, they are not necessary parties to an appeal. This position, we think, is sustained both by reason and authority. Sureties to such a stipulation are not parties to the controversy. The claimant

alone conducts and controls the defense. This was early decided in Lane v. Townsend, 1 Ware, 289, Fed. Cas. No. 8,054. Counsel for the appellees contend that the decision in that case has no application here, for the reason that it was rendered prior to the enactment of the act of 1847 authorizing the entry of judgment against the surety at the time of rendering judgment against the principal. But we are unable to see how that fact is material. In The Glide, 72 Fed. 200, 18 C. C. A. 504, the Circuit Court of Appeals for the Fourth Circuit reaffirmed the doctrine that sureties on a stipulation in admiralty stand in the position of bail to the action, and are not parties to the cause, but are represented by the claimant; and that, having covenanted to pay such decree as may be made against him, the decree against him binds them. Again, in The New York, 104 Fed. 561, 44 C. C. A. 38, the Circuit Court of Appeals for the Sixth Circuit, upon an exhaustive discussion of the question, held that the stipulators for the release of a vessel do not become parties to the suit in any such sense as to require that they be joined in an appeal taken by the claimant from a judgment in a suit, although such judgment is joint in form against the claimant and the stipulators, unless some extraneous question has arisen in the suit involving the scope of the bond or the obligation of the sureties thereof. The appellees rely upon Ex parte Sawyer, 21 Wall. 235, 22 L. Ed. 616, in which, in the course of the decision, the court remarked: "The sureties upon the stipulation are entitled to an appeal from any decree that may be rendered against them;" and further said: "From that decree another appeal must be allowed, or the sureties will be bound by a proceeding to which they were not and could not be parties." But this language of the court must be interpreted in the light of the facts in that case and the question which was presented for determination. The case had been appealed from the District Court to the Circuit Court, and from the decision of the Circuit Court an appeal had been taken to the Supreme Court, which court affirmed the decree of the Circuit Court. Thereafter, having received the mandate from the Supreme Court, the Circuit Court directed that the sureties show cause, if any they had, why an execution should not issue against them. On the hearing upon this order to show cause the Circuit Court held that the sureties were not liable upon the stipulation, and declined to issue execution. Thereupon an application was made to the Supreme Court for mandamus to compel the Circuit Court to order that execution issue against the sureties. Mandamus was refused on the ground that the Supreme Court on the appeal had only affirmed the decree of the Circuit Court, and had given it no instructions, and that the action of that court was subject to review by appeal only, and not by mandamus. The case was one in which a question had arisen as to the liability of the sureties upon their stipulation. It was a question which had nothing to do with the merits of the original case, but it presented a controversy in which their attitude was antagonistic to the claimant, and upon which they had a right to be heard. There is nothing in the case to indicate that their right to appeal, which the Supreme Court recognized, would have existed if a question had not arisen as to their liability upon the stipulation. The decision is believed to be in harmony with the rule that in all matters connected with the merits of

the case the stipulators are not properly parties to the suit, but are represented by the claimant. The surety on a stipulation in admiralty is not in the attitude of an ordinary surety on a common-law bond or undertaking. The stipulation runs to the marshal, and is a mere substitute for the res. Section 941 of the Revised Statutes [U. S. Comp. St. 1901, p. 692] provides that such a bond or stipulation shall be returned to the court, "and judgment thereon, against the principal and sureties, may be recovered at the time of rendering the decree in the original cause." This has always been held to mean that the entry of judgment against the stipulators is a matter of course, and that the stipulators have rendered themselves subject to such entry of judgment by the bare fact that they have so stipulated. On an appeal from a final decree in admiralty the case is tried de novo. The stipulation follows the appeal, and is subject to the decision thereof. Said the court in The Wanata, 95 U. S. 600, 24 L. Ed. 461:

"Where the claimant appeals from the decree of the District Court, the bond and other stipulations follow the cause into the Circuit Court, and upon the affirmation of the decree the fruits of the appeal bond and other stipulations may be obtained in the same manner as in the court below, they being in fact nothing more than a security taken to enforce the original decree and are in the nature of a stipulation in admiralty."

In The Belgenland, 108 U. S. 153, 2 Sup. Ct. 383, 27 L. Ed. 685, the court said:

"It is no doubt within the power of the court to postpone a decree against the sureties until after the time for appeal by the principal has expired, and then proceed only on notice."

There is implied in these utterances of the court a denial of the right of the sureties to be heard on the appeal as to any matter affecting the merits of the main controversy. No controversy has arisen in this case concerning the liability of the surety company upon its stipulation. So far from seeking to deny its obligation, it appears in this court as the surety for the appellant upon the appeal, and no exception has been taken to the appeal bond on that account. The motion to dismiss will be denied.

The District Court, upon testimony taken before a commissioner and reported to the court, found that the tugs Wallula and Tatoosh rendered the Nelson extraordinary towage services when she was in distress and danger, for which their owner was entitled to receive $2,500; and that the Walla Walla, her captain, officers, and crew, rescued the Nelson from extraordinary peril and probable destruction; and that the services rendered were of a high order of merit, and entitled to be compensated on a scale of liberality. On reading the voluminous and conflicting evidence in the record, we are not convinced that these conclusions were erroneous. The general rule is well established, and has been repeatedly affirmed by this and other courts, that the findings of fact of the trial court in an admiralty case made upon conflicting testimony will not be disturbed on appeal, unless they are found to be clearly against the weight of the evidence. The Alijandro, 56 Fed. 621, 6 C. C. A. 54; Whitney v. Olsen, 108 Fed. 292, 47 C. C. A. 331; The Oscar B., 121 Fed. 978, 58 C. C. A. 316; Memphis & Newport Packet Co. v. Hill, 122 Fed.

246, 58 C. C. A. 610. It is equally well established that the amount of the award in a salvage case, resting, as it does, largely in the discretion of the trial court, will not be readjusted in an appellate court, where there has been no mistake of fact or application of an unwarranted rule of compensation in arriving at the award. Simpson v. Dollar, 109 Fed. 814, 48 C. C. A. 663, and cases there cited; The Flottbek, 118 Fed. 954, 55 C. C. A. 448, 458. While we are disposed to think that the award in this case may have been greater than the actual peril of the Nelson, as we understand the testimony, warranted, we would not feel justified in disturbing it were it not for the fact that, in our opinion, a mistake of law was made in including in the estimate of the value of the salved property as the basis of the award, the amount of the total freight which was to be earned by the Nelson on her voyage from Portland, Or., to the United Kingdom. By the decided weight of authority the amount of freight to be reckoned in the value of the salved property in such a case is the proportion thereof which has been actually earned at the time of the salvage service. In Jones on the Law of Salvage, 91, it is said:

"In estimating the salvage upon freight where the services of the salvors terminate before the completion of the voyage, the court will treat the freight as divisible, and as though a pro rata freight were payable at the intermediate port."

See, also, James, on the Law of Salvage, 122; Carver's Carriage at Sea (2d Ed.) 351; The Suliote (C. C.) 5 Fed. 99; The Sandringham (D. C.) 10 Fed. 556, 576; The Norma, Lush. 124. In the case last cited Dr. Lushington said:

"But in salvage we have to decide on purely equitable principles, and the question here is not so much what freight was earned at Bermuda, but what services, in respect of the contract for freight, the salvors had then earned. Judging by this test, the salvors are entitled to salvage upon a considerable part of the total freight, for it is clear that a large portion of the voyage had been performed before the salvage service, and that the entire benefit of so much was preserved to the shipowners by the salvors, not, indeed, absolutely, for expenses had to be incurred, and the perils of the voyage from Bermuda home had yet to be undergone, but preserved from immediate and total loss."

Applying the rule to the case at bar, we find that of the freight of the Nelson for the voyage upon which she had sailed there was salved to her owners the cost of loading at Portland and the very small proportion of the voyage which had been accomplished. Indeed, when we come to consider that from the port at which the vessel was left by the salvors the voyage to the United Kingdom was as long as from Portland, and that the cargo had so listed as to render it necessary to restow the same, it is doubtful whether any freight whatever should enter into a consideration of the value of the property salved. The amount of freight earned and saved to the owners was, in any event, inconsiderable, and we think the ends of justice will be subserved by wholly eliminating from the valuation the item of freight, rather than by remanding the cause to the District Court for the purpose of hearing evidence upon the doubtful question whether some portion thereof had not in fact been earned at the time of the salvage services.

Estimating the value of the ship when brought into the port of Seattle at $25,000 and her cargo at $35,000, as found by the District Court, it is ordered and adjudged that the decree be modified; that there be awarded to the owner of the Walla Walla the sum of $12,000, and to her master, officers, and crew the sum of $4,160, the same to be charged five-twelfths against the ship and seven-twelfths against the cargo; and that in other respects the decree of the District Court be affirmed.