## THE EDWARD SMITH.

### (Circuit Court of Appeals, Sixth Circuit. January 14, 1905.)

### Nos. 1,350, 1,351.

1. ADMIRALTY—REVIEW ON APPEAL—FINDINGS OF FACT.

Where the district judge in an admiralty cause saw and heard the witnesses, a judgment based on findings of fact made on conflicting evidence will not be reversed by an appellate court, unless there is a decided preponderance of evidence against it.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 770.]

2. COLLISION—STEAM VESSELS MEETING TOW—CROWDING BY OVERTAKING VESSEL IN CHANNEL.

The steamers Masaba and Smith were passing up through Lake St. Clair, and, about the time they entered the dredged channel leading to the canal, passing signals were exchanged with the Aurora, coming down with the barge Aurania in tow, then coming out from the canal some two miles away. The Masaba, which was the larger and faster vessel, and having a tow, about this time overtook the Smith, and, without any agreement by signal, undertook to pass her on the starboard side, entering the channel nearly abreast, in violation of the rules governing the navigation of the canal and approaches. The vessels were nearly abreast, and not over 100 feet apart, when they passed the Aurora, and the Smith, which had checked speed somewhat, was affected by the suction of the Masaba, and sheered toward the Aurora, but increased her speed and overcame the suction, passing in safety. She then checked again, and was again caused to sheer by the effect of the suction, crossing the Aurora's towline, and coming into collision with the Aurania; both vessels being seriously injured. *Held,* that the Masaba was primarily in fault, and liable to both the Aurania and Smith; that the latter was also in fault, and responsible for half the damages to the Aurania and herself, on the ground that she permitted the Masaba to attempt to pass, in violation of the rules, without protest, or that she did not drop behind before meeting the tow, and in checking unreasonably a second time under conditions which subjected her more strongly to the influence of suction after passing the Aurora.

[Ed. Note.—Collision, overtaking vessel, see note to The Rebecca, 60 C. C. A. 254.]

Appeal and Cross-Appeal from the District Court of the United States for the Northern District of Ohio.

For opinion below, see 105 Fed. 987.

In No. 1,350:

Shaw, Warren, Cady & Oakes and H. Putnam, for appellant.

Goulder, Holding & Masten, Hoyt, Dustin & Kelley, and C. E. Kremer, for appellees.

No. 1,351:

Hoyt, Dustin & Kelley and C. E. Kremer, for appellant.

Shaw, Warren, Cady & Oakes and Goulder, Holding & Masten, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from a decree of the District Court, sitting in admiralty, pronounced by Ricks, District Judge, condemning both the steamer Edward Smith No. 2 and the steamer Masaba for a negligent collision between the steamers Edward

Smith No. 2 and the barge Aurania, by which both the steamer and the barge sustained heavy damages. The collision occurred in or near to the dredged channel by which the canal proper is approached from the head of Lake St. Clair. It occurred in broad daylight on July 24, 1898, and the vessels implicated were long in view of each other, having exchanged passing signals when nearly two miles apart. The original libel was filed by the owners of the Aurania against the steamer Edward Smith No. 2 and the Masaba. The Edward Smith filed a cross-libel against the Masaba to recover her own damages. The other facts essential to be now stated are these:

The barge Aurania, in tow of the steamer Aurora, was bound down. The steamer Edward Smith No. 2 and the steamer Masaba, having in tow the barge Manda, were bound up; the Smith being on the port side. The position at the time of the collision is fairly indicated by a diagram from brief of the proctors for the owners of the Smith:

About the time that the Aurora came out of the canal proper she exchanged passing signals of one blast with both the Smith and the Masaba, which were then about the head of the lake, and coming up abreast, or nearly so. The course of the Aurora and her tow, the barge Aurania, was, in accordance with this agreement, directed well over to the western side of the dredged channel, and the Smith was safely passed about 100 feet on the port side of the Aurora. But, after the

Smith had so safely passed the Aurora, she took a sudden and rapid sheer across the bow of the Aurora's tow—the Aurania—resulting in a collision in which both the Smith and the Aurania sustained severe injuries; the Smith sinking rapidly on the western side of the dredged channel, while the Aurania went aground on the opposite side.

It is conceded on all sides that the navigation of the Aurora and of the Aurania was without fault, and that she is entitled to recover her damages against either the Smith or the Masaba, or against both, unless it is shown that the sheer of the Smith was due to some cause for which neither of the libelees is to be condemned.

The district judge heard and saw the witnesses, who testified orally in the court below, and his finding of fact upon a question of conflicting evidence is entitled to much weight. In the case of The City of Cleveland v. Chisholm, 90 Fed. 431, 434, 33 C. C. A. 157, we said:

"Notwithstanding this right of retrial here, the rule prevails that the judgment of the District Court will not be reversed, when the result depends alone upon questions of fact depending upon conflicting evidence, unless there is a decided preponderance against the judgment, where the trial judge saw and heard the witnesses and had an opportunity of weighing their intelligence and candor."

The same rule applies in other Circuit Courts of Appeal. Pioneer Fuel Co. v. McBrier, 84 Fed. 495, 497, 28 C. C. A. 466; The Brandywine, 87 Fed. 652, 31 C. C. A. 187; The Captain Weber, 89 Fed. 957, 32 C. C. A. 452. When, however, the evidence is taken before an examiner, this rule does not apply. The Glendale, 81 Fed. 633, 26 C. C. A. 500; The Sappho, 94 Fed. 545, 36 C. C. A. 395.

There were three questions of fact, upon which the evidence was very conflicting, which have an important bearing upon the results. One of these was the relative position of the Smith and Masaba at the time of the former's sheer. The libel filed by the owners of the Aurania, as well as the cross-libel filed by the Smith, against the Masaba, aver that at the time of this sheer the Smith and the Masaba were about abreast and very close together. The Masaba had a length of 310 feet; the Smith 218 feet. The Masaba had a greater beam by 3 feet. The Smith was loaded, having a 1,500-ton cargo. The Masaba was empty, but had a tow and some 800 or 900 tons of water ballast. The Smith drew about 13 feet 6 inches forward and about a foot more at her stern. The Masaba, moving, was drawing about 4 feet forward, but at her stern, when moving with her tow, about 15 feet, and in the shallow water of the canal entrance possibly a foot or so more. The Masaba was not only the larger, but also the faster, boat, and before and about the time of the sheer her speed was slightly the greater. That the Smith had passed the Masaba at Detroit is admitted. The Masaba followed the Smith out of the Detroit river and into Lake St. Clair. The claim that the Masaba passed the Smith while crossing Lake St. Clair, so that, when the head of the lake was reached, the Smith was the overtaking vessel, is not established. The evidence upon the point is conflicting. But the trial judge who heard and saw the witnesses reached the conclusion that the Masaba was endeavoring to pass the Smith, and had been the overtaking vessel all the way across Lake St. Clair, and that at the time of the sheer, and for some short time

before, had been traveling almost abreast of the Smith; the sterns of the two boats being about together, while the bow of the longer vessel was from 50 to 75 feet in advance of the stem of the shorter steamer.

Another of the disputed questions of fact was as to the locality of the collision. The weight of evidence is that it occurred from one-half to one mile below the canal proper, the canal with visible banks, and in the dredged channel by which the canal proper is approached from the head of Lake St. Clair. There is some doubt about the width of this approach at the time of the collision. Its official width, as shown by charts, is now about 400 feet, narrowing until canal banks proper are entered, when the width is about 300 feet. The probabilities are that this collision took place where there was a navigable channel, including the dredged or improved approach, of close onto 800 feet. Under the canal regulations this improved channel of approach, both above and below the dikes of the canal, is comprehended in the canal, and within the rules for canal navigation.

The faults charged against the Masaba in the libel of the Aurania, which are relied upon, are: First, that she persisted in an effort to overhaul and pass the Smith in the shallow waters of the canal approach at the head of Lake St. Clair; second, in going so close to the Smith as to interfere with her steering and in causing her to sheer.

In the cross-libel of the Smith against the Masaba, the faults charged are: First, that she attempted to overhaul and pass the Smith without any agreement by signals; second, that upon getting abreast of the Smith she persisted in her effort to pass after entering upon the narrow waters of the dredged channel, in violation of the rules and regulations for the navigation of the canal, which forbid two vessels entering abreast, or to pass another vessel in the canal while going in the same direction; third, in not dropping astern on the approach of the down-bound Aurora and her tow until they should get through the canal; fourth, that she crowded so close upon the course of the Smith that the latter could not safely drop astern, nor be steered safely, and caused her by suction to sheer over into the course of the Aurania.

That the Masaba was violating the rules regulating the navigation of the St. Clair Flats Canal, in that she had entered the dredged channel practically abreast of the Smith, and that she persisted in her effort to pass the Smith after getting into the approach, we have no doubt. Still, if her violation of these canal rules did not contribute to the sheer of the Smith, she is not to be condemned. But the burden is upon her to show that her violation of the rules did not contribute to the collision, which occurred while she was proceeding in defiance of the canal regulations. Belden v. Chase, 150 U. S. 675, 14 Sup. Ct. 264, 37 L. Ed. 1218.

We will not now stop to consider whether the Masaba has shown that her violation of these canal rules had nothing to do with the sheering of the Smith. There is a much larger question, or two of them, and if the Masaba can escape condemnation upon these greater matters she will have little trouble with the breaches of the minor rules of navigation. The Masaba, as we have already seen, was the overtaking vessel. She had not ceased to be in that category when the Smith took her sheer. The evidence satisfactorily establishes that for perhaps half a mile

and more the two boats had been almost abreast, the stem of the Masaba being from 50 to 100 feet in advance of the stem of the Smith. The difference in speed was little, about one mile per hour in favor of the Masaba. She was probably two miles behind the Smith on coming out of Detroit river, and had almost come abreast before reaching the head of the lake. But without passing she seems to have then pulled out to the starboard, "to get away from the Smith's smoke." But she was very soon again headed for the canal, which put her on a course converging upon that of the Smith. It is not plain just when this course brought her again into close proximity with the Smith, but the weight of evidence seems to indicate that she came abreast, or nearly so, about the time passing signals were exchanged between the down-bound tow and the Smith and Masaba. This was probably 1½ miles below the canal proper.

Upon this matter of the proximity of the Masaba to the Smith at the time and just prior to the sheer there is much conflict. The witnesses estimate this distance all the way between 700 and 50 feet. The extreme estimates come from the decks of the Smith and the Masaba. The average distance, as testified to by the witnesses from the deck of the Masaba and her tow, the Manda, is from 300 to 400 feet, a distance which, if credited, will quite overthrow the theory that the Masaba's suction caused the sheer of the Smith. Upon the other hand, the average estimate by the witnesses from the decks of the Smith, the Aurora, and the Aurania is 100 feet or less.

We have considered all of the evidence, including Miss Green's photograph, and the expert opinion as to the distance of the Masaba from the Smith when this was taken, according to the laws of optics and photography. Without going into details, we are of opinion, from all the circumstances and all the conditions, that the Masaba, at the time of the Smith's sheer, was not more than 100 feet off the Smith's starboard hand, and that the sterns of the two boats were about abreast, the stem of the Masaba being some 50 or 75 feet in advance of the stem of the Smith; the latter being the shorter boat by some 90 feet. We are also quite of the opinion that at this distance, between two boats so unequal in length and displacement, traveling in the same direction, and in shallow water, where suction is more likely to be felt, the navigation of the Smith was influenced and her steering made uncertain, and that the proximate cause of the sheer of the Smith was the suction of the Masaba. As the overtaking vessel, it was the duty of the Masaba to keep out of the way of the Smith, and this means that it was her duty, whether the Smith had tacitly consented to being passed or not, to keep far enough off the course of the latter to avoid the influence of suction. The Ohio, 91 Fed. 547, 550, 33 C. C. A. 667.

But we do not think that the Smith has so fully met the burden which, as between her and the Aurania, devolves upon a vessel which endeavors to excuse her sheer. In the case of The Ohio, 91 Fed. 547, 549, 33 C. C. A. 667, where the Siberia endeavored to excuse a sheer across the course of the Ohio by showing that it was caused by the suction of the Mather, a passing vessel, we said:

"If this swing from her course was caused wholly by the wrongful approach of the Mather, and could not have been prevented or broken before

the collision by the use of all the means which were reasonably within the control of those charged with her navigation, she must be acquitted; for the cause of the collision would be a cause not produced by her. But the burden is upon her to show, not only that her sheer was caused by the wrongful conduct of the Mather, but that her own management was such, both before and after the sheer, as not to have contributed to the final collision."

We cannot assent to the argument that the Smith was misled and had no sufficient reason to suppose that the Masaba would persist in her effort to pass after reaching the dredged approach to the canal, a thing prohibited by the canal rules, or would persist in going abreast, a course likewise forbidden by the canal rules. But it is difficult to see how she could fail to misapprehend her purpose to persist in her effort to pass, or at least to continue abreast. The libel of the Smith, referring to this matter, says:

"As the Masaba came up abreast of the Smith, she came in closer to the latter on a course somewhat converging with the Smith's course. When her bow was thus abreast of the Smith, it was apparent that, as the vessels were then going, the Smith must enter the canal abreast of the tow. Thereupon, it being apparent that the Smith could not get ahead of the Masaba, which continued going at apparently full speed, the Smith's engine was checked in an endeavor to drop behind the tow."

This refers to a checking which occurred at the head of the lake, and just before entering the canal approach, and just before the exchange of passing signals with the Aurora. This first checking does not seem to have been made with any view of dropping back. Mr. Moore, her first officer, and in charge of her navigation then, says of this:

"I saw the Aurora coming out, with her consort, the Aurania, and was getting up pretty close to them, and I looked around and saw the Masaba nearly abreast of us. We ran along a little while, and it wasn't a great while before he pulled up abreast of us. I was getting pretty well to the dredged cut then, and I checked down, which was a thing we always do there, generally check down and go slow speed, and ran along a little while, and I checked the second time. I didn't care to be too fast and get up when the Aurora was in the narrow channel. I thought probably his barge would be steering a little bad then, and I wouldn't care to meet him."

The Smith's libel says of this second checking:

"Thereafter the Masaba crowded over toward the Smith, and the latter was kept off to port and checked a second time to as slow an engine as she could take and maintain steerage way; but the Masaba seemed to draw her along and pass very slowly, and, as the Aurora and Smith were about to meet and pass, the suction of the Masaba caused the Smith to sheer to port and toward the Aurora, and she was rung up full speed under a hard aport wheel to break sheer and avoid a collision."

She recovered from this sheer, and the Aurora passed safely. Not warned by the effect of this checking when so close to a larger and faster boat going in the same direction, the libel says, she "was again checked as soon as she was started," when she went off again on another sheer, which was not broken by the tactics before employed, with the result that she was carried across the Aurora's towline and into collision with the Aurania.

The faults of the Smith are that she did not seasonably signify her unwillingness that the Masaba should pass her, or that she did not drop behind before entering the canal approach and before meeting the down

tow, and in checking unseasonably and irrationally, under conditions which were likely to subject her more strongly to the influence of suction at the stern of the Masaba. To check again after recovering from the first sheer, a sheer manifestly due to the more effective exertion of suction by reason of having dropped back under a reduced speed, was to invite a repetition of the same consequences before experienced. This checking under the conditions existing, aside from the failure to protest against the persistent effort of the Masaba to pass under the complications due to the passing of the down-bound tow, was a positive fault in navigation, after the force of suction had begun to manifest itself. Her deviation from her course under such circumstances was, therefore, not solely due to the fault of the Masaba. We may repeat and apply here what we said in the case of The Ohio, supra, in reference to the sheer of the Siberia:

"But the Siberia does not exonerate herself from liability to the Ohio by simply showing that she thus came within the influence of the suction of a passing steamer. The Ohio has a right to call upon her to show that she was brought within this dangerous influence without fault, and that there was no fault in her management after this force began to exert itself upon her." The Ohio, 91 Fed. 547, 33 C. C. A. 667.

The Smith has not met this burden in either particular.

A somewhat less stringent rule of responsibility is applicable when we come to determine the liability of the Masaba to the Smith. Thus, if the Masaba by her own wrongful conduct placed the Smith in a position of immediate and extreme danger, she would not be held to blame if she did something wrong in her endeavor to extricate herself, and should not be held to have contributed to her own damage. The Ohio, 91 Fed. 547, 558, 33 C. C. A. 667; The Maggie J. Smith, 123 U. S. 349, 355, 8 Sup. Ct. 159, 31 L. Ed. 175. But that is not the case here. The faults of the Smith for which we have held her liable are not faults in extremis. True, she was wrongly crowded so close by a larger and faster steamer, going through shallow waters, that the influence of suction was to be apprehended. But she suffered herself to be placed in this position without her consent, but also without protest. When she realized that the Masaba intended to persist in an effort to pass her in the waters of the canal, or to traverse them abreast, both being in violation of the rules regulating the navigation of the canal, she still did not protest. To avoid a continuance of a situation which involved a violation of the canal rules, she checked, not once, but twice—a course which plainly involved increased danger of sheering.

But it is said that the burden upon a large steamer overtaking a smaller and slower one, in confined and shallow water, is so great, and the faults of the former so much greater, that the overtaken and smaller steamer should not be held to a division of damages. For this rule counsel cite the cases of The Great Republic, 23 Wall. 20, 35, 23 L. Ed. 55, and The Oregon, 158 U. S. 187, 15 Sup. Ct. 804, 39 L. Ed. 943. It may be conceded that the Masaba was the chief offender, but it cannot be averred that the faults of the Smith were trivial, or that the faults of the Smith did not effectively contribute, or that they have not been plainly established. Under such circumstances there is no other rule than a division of damages, although it would seem more equitable

if the greater damages could be charged against the vessel primarily and chiefly responsible.

Without an undue extension of this opinion, we cannot in detail consider a number of arguments which have been presented in behalf of the appellees. It is enough to say that the case has been examined in all its phases, and we have deemed it sufficient to present only the leading grounds upon which we rest a judgment of affirmance.