ROYAL EXCH. ASSUR. v. GRAHAM & MORTON TRANSP. CO.

(Circuit Court of Appeals, Seventh Circuit.   July 22, 1908.   Rehearing Denied
October 24, 1908.)

Nos. 1484, 1485, 1486, and 1487.

1. INSURANCE (§ 470*) — MARINE INSURANCE — ABANDONMENT—"CONSTRUCTIVE
TOTAL LOSS."

Under the American rule relating to marine insurance, a constructive
total loss with right of abandonment to the insurers exists where the
damage is in excess of one-half of the insured value of the vessel or thing
insured; but the right of abandonment, which must be exercised prompt-
ly in case of a disaster, does not depend on the certainty, but upon the high
probability, of such loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1192; Dec. Dig.
§ 470.*

For other definitions, see Words and Phrases, vol. 2, pp. 1475, 1476.]

2. INSURANCE (§ 470*)—MARINE INSURANCE—ABANDONMENT.

The right of an assured to abandon a vessel on the occurrence of a dis-
aster must be determined as of the date of the abandonment, without re-
gard to subsequent events, although they may be shown so far as they bear
on the pre-existing state of the ship.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1192; Dec. Dig.
§ 470.*]

3. INSURANCE (§ 470*)—MARINE INSURANCE—ABANDONMENT.

An assured cannot be required to abandon a vessel to the insurer, al-
though the loss, actual and prospective, may exceed one-half the value fix-
ed in the policy; but his right to abandon depends upon the fact or high
probability of such excess, and not upon what he may deem most to his ad-
vantage.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1192, 1193; Dec.
Dig. § 470.*]

4. ADMIRALTY (§ 118*)—APPEAL—REVIEW—FINDINGS OF FACT.

The finding of an ultimate fact by the trial court in a suit in admiralty
is not conclusive on appeal, but is entitled to much weight, and under
conflicting testimony, with the witnesses testifying before the judge, will
not be set aside, unless it clearly appears that it is either unsupported by
the evidence or against the evidence.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 770; Dec. Dig.
§ 118.*]

5. INSURANCE (§ 470*)—MARINE INSURANCE — ACTION ON POLICY—EVIDENCE OF
CONSTRUCTIVE TOTAL LOSS.

Upon the question whether there was high probability of a constructive
total loss of a stranded vessel, which justified her abandonment to the in-
surers, the customary value of well-directed wrecking services performed
in her attempted rescue may be considered, although by reason of the con-
ditional contract under which they were rendered they were not required
to be paid for.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1193; Dec. Dig.
§ 470.*]

6. INSURANCE (§ 665*)—MARINE INSURANCE—ABANDONMENT.

Evidence considered, and held to sustain a finding that there was a high
probability that the loss, present and prospective, incident to the strand-
ing of a vessel, would exceed half her insured value, and warranted her
abandonment to the insurers.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1722; Dec. Dig. §
665.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. TRIAL (§ 56*)—RECEPTION OF EVIDENCE—DISCRETION OF COURT.**

The exclusion of opinion evidence which is merely cumulative is within the discretion of the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 131; Dec. Dig. § 56.*]

**8. INSURANCE (§ 536*) — MARINE INSURANCE — ACTION ON POLICY — CONDITION PRECEDENT.**

Formal proof of loss is not essential to a recovery on a marine policy under an abandonment, where the right of abandonment is the only issue.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1323; Dec. Dig. § 536.*]

**9. INSURANCE (§ 612*)—CONSTRUCTION OF POLICY—CONDITION PRECEDENT.**

In a policy of so-called "disbursement" insurance "against the risk of total or constructive total loss of the vessel only," a provision that "a total and/or constructive total loss paid by insurers on hull to be a total loss under this policy" is not a limitation of liability, but merely a provision for simplification of proof in the case stated, and payment of a total loss by the hull insurers is not a condition precedent to a recovery on such policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1520; Dec. Dig. § 612.*]

**10. INSURANCE (§ 149*) — CONSTRUCTION OF POLICY — PRINTED AND WRITTEN PORTIONS.**

A provision in the printed form of a marine policy, adapted to a different kind of risk, that there should be no right of abandonment for a constructive total loss unless the loss should exceed 75 per cent. of the insured value, *held* controlled by a rider which plainly, by reference to other policies, gave the right of abandonment if the loss exceeded one-half such valuation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 301; Dec. Dig. § 149.*]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Separate libels filed by Graham & Morton Transportation Company against Royal Exchange Assurance, Commercial Union Insurance Company, Indemnity Mutual Marine Insurance Company, and Sea Insurance Company. From decrees in favor of the libelant, each insurance company appeals. Affirmed.

These appeals are from four decrees respectively, in admiralty, in favor of the appellee, Graham & Morton Transportation Company, upon libels filed by such appellee to recover the amounts of marine policies of insurance written by the appellants, respectively, on the steamer Argo. The cases were heard together, as involving substantially the same facts, are presented for review under a single certificate of evidence (appearing in No. 1,484), and are here considered in a single opinion on the several appeals.

The steamer Argo, owned by the appellee, was insured in various insurance companies under two different classes of policy—one class upon hull and machinery, and the other a special class of marine indemnity, known as "disbursement" insurance, payable only in the event of actual or constructive total loss. The hull insurance was placed in 10 different companies, with varying amounts, aggregating $60,000, and these policies fixed the insurance valuation of the steamer at $60,000. The so-called "disbursement" insurance was placed in four companies—two of such insurers appearing as well to be insurers upon the hull—aggregating $30,000 in amount.

The insurance companies and policies involved in the present decrees are: No. 1,484. Royal Exchange Assurance, policy on hull for £815. No. 1,485, Com-

mercial Union Insurance Company, insurance on "disbursements" for £1,500, No. 1,486, Indemnity Mutual Marine Insurance Company, one policy on hull for £1,200, and another on "disbursements" for £1,000. No. 1,487, the Sea Insurance Company, insurance on "disbursements" for £1,500.

With all of the above-mentioned policies in force—$60,000 on hull and $30,000 on "disbursements"—the steamer Argo, laden with passengers and a cargo of merchandise, became stranded on the east shore of Lake Michigan, north of the harbor piers, at the port of Holland, Mich., on the morning of November 24, 1905. Notice of such stranding was promptly given by the insured to representatives of the underwriters on the same day, together with oral notice of abandonment of the vessel to the underwriters; and on November 25th and 26th, written notice was served upon the insurers, respectively, that the appellee (insured) abandoned to such insurers the steamer Argo, which was then stranded as described and "a total loss," with demand of the amount insured. The hull insurers refused to accept abandonment, but proceeded with operations to release the steamer and cargo, as authorized under the terms of the policies; and after two failures in November and December, the Reid Wrecking Company was engaged by them to release the steamer for the sum of $6,500, payable only in the event of success, and the Argo was released and brought into the port of Holland January 28th. She was there repaired temporarily and then steamed to Manitowoc for dry dock, arriving February 12th, where she has since remained unrepaired, pending determination of the various libels.

All of the hull policies were in the usual form of marine insurance, and no controversy arises over their terms, as applicable not only to actual loss, either partial or total, but for insurance against constructive total loss (as defined in the law of marine insurance), wherein the injury exceeds one-half the value of the vessel as fixed in the policy. So each provides that the right of abandonment for such cause "shall not exist unless the loss exceeds one-half the value of hull and machinery as stated in this policy." The testimony upon the issue thus arising—namely, whether such abandonment to the insurers was authorized under the circumstances existing at the time thereof—is sufficiently mentioned in the following opinion.

The policies called "disbursement" insurance are obligatory only in the event of actual or constructive total loss, and such terms of these policies as enter into consideration are referred to in the opinion.

It is averred in the libels and appears from the testimony that the various other insurance policies covering the loss in question, issued (as above mentioned) by other insurers than the parties to the present decree, have been fully paid by such insurers, as for constructive total loss—under adjudications of such liability in some instances, and by voluntary payment in others.

Harry D. Goulder and Frank S. Masten, for appellants.

Charles E. Kremer, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The decrees appealed from are each founded upon policies of marine insurance written in favor of the appellee, upon the steamer Argo, which were in force when the insured steamer became stranded on the east short of Lake Michigan while attempting to make the port of Holland, Mich., in a storm, November 24, 1905. The terms of insurance and fact of stranding, as averred in the libels respectively, are undisputed. Notice of the disaster, followed by notice of abandonment to the insurers, was promptly given by the appellee; and the underwriters upon the hull proceeded at once in efforts to release the steamer—as authorized under the terms of their policies—without accepting the abandonment. On January 28th the Reid Wrecking Company, employed for the purpose after two wrecking expeditions had failed, succeeded in such release. Under each libel the contentions were for

and against the right of abandonment, as a constructive total loss, within the terms of the policies and the rules applicable to such issue; and the testimony bearing upon the solution is voluminous, and conflicting as well, in various particulars. The District Judge, hearing this testimony, mainly given by witnesses in open court, states (in the opinion filed below), as his conclusion from the evidence, that "the dangers to be apprehended" from the stranding "justified the owner in abandoning the boat, because there was a high probability that the cost of rescue and repair would exceed thirty thousand dollars"; and thereupon awarded recovery in full in each case.

1. For reversal of such decrees, the main contentions on behalf of each appellant are in reference to this conclusion of the trial court, as predicated (1) upon an erroneous view of the rule of law which must govern the issue, and (2) upon incompetent and insufficient testimony, disregarding the true tests of "high probability" or "highest probability" at the date of abandonment.

(1) The amount of insurance upon hull and machinery, involved in the present inquiry, was $60,000, distributed under 10 insurance policies, issued by different insurers, with the valuation of the steamer fixed therein at $60,000. Under the American maritime rule applicable to such policies, and as well under their express terms, constructive total loss with right of abandonment to the insurers existed in the event of damage in excess of one-half such valuation, namely, $30,000. When the stranding of the insured steamer occurred, the rule referred to required prompt decision and action on the part of the appellee, if such right of abandonment was claimed. From the nature of these disasters, certainty of results cannot be made the test, and the rule thereupon, stated in Kent's Commentaries (3 Kent. Com. 321), has become the established doctrine in America (Bradlie v. Maryland Ins. Co., 12 Pet. 378, 397, 9 L. Ed. 1123; Orient Ins. Co. v. Adams, 123 U. S. 67, 75, 76, 8 Sup. Ct. 68, 31 L. Ed. 63), namely:

"The right of abandonment does not depend upon the certainty, but on the high probability, of a total loss, either of the property or of the voyage, or both. The insured is to act, not upon certainties, but upon probabilities, and if the facts present a case of extreme hazard, and of probable expense exceeding half the value of the ship, the insured may abandon, though it should happen that she was afterwards recovered at a less expense."

In the early and leading case of Peele v. Merchants' Ins. Co., Fed. Cas. No. 10,906, 3 Mason 27, Mr. Justice Story reviews and distinguishes the authorities with definitions of the rule thus adopted for ascertaining whether abandonment is justified; and we deem no citations needful, other than above noted, for the rule of law applicable to the case at bar.

The authorities referred to settle not only the rule as stated, but these further propositions for its interpretation: (a) The right to abandon the vessel to insurers must be determined as of the time of abandonment; if then good, "the rights of the parties are definitely fixed, and do not become changed by any subsequent events"; if not good, "subsequent circumstances will not affect it, so as, retroactively, to impart to it validity, which it had not in its origin." Bradlie v.

Maryland Ins. Co., 12 Pet. 378, 397, 9 L. Ed. 1123. Moreover, it depends upon the existing state of facts, with hazards involved therein, and not upon the state of information received. (b) Nevertheless, subsequent events are admissible and enter into consideration in so far "as they operate by way of evidence upon the pre-existing state of the ship" (Peele v. Merchants' Ins. Co., supra); and in like view, evidence of efforts made and expenses incurred in subsequent release of the vessel may be considered, under proper restriction, to ascertain the pre-existing conditions and hazards (Bradlie v. Maryland, supra; Orient Ins. Co. v. Adams, 123 U. S. 67, 76, 8 Sup. Ct. 68, 31 L. Ed. 63). (c) The assured cannot be required to abandon, although the loss, actual and prospective, may exceed one-half the value fixed in the policies; but the right of abandonment depends alone upon the fact of such excess, and cannot rest, as contended on behalf of the appellee, upon the election of the assured that it was "most to his advantage," or more profitable for him, to abandon, "in view of the additional so-called disbursement insurance." (d) The burden of proof to establish right of abandonment is cast upon the assured, as libelant.

The opinion and rulings of the trial court plainly recognize the rule and propositions of law above stated as controlling, and the finding of ultimate fact, as recited in the opinion, appears to be stated in conformity therewith. The complaint, therefore, that the rules of law were disregarded in such conclusion must rest upon their application to the facts in evidence or other assignments of error.

(2) The contention that the decrees are unsupported by competent evidence is earnestly pressed for review of the testimony, and we recognize the importance of the issues of law and of fact involved in such inquiry. With the issue of law determined, as above stated, it goes without saying that no facts can enter into consideration which do not tend to prove or disprove "high probability that the cost of rescue and repair would exceed thirty thousand dollars," as found by the trial court. The finding of such ultimate fact is not conclusive upon appeal, but is entitled to much weight; and under conflicting testimony, with witnesses before the trial judge, will not be set aside unless it clearly appears that the conclusion is either unsupported by the evidence or against the evidence. The Edward Smith, 135 Fed. 32, 34, 67 C. C. A. 506; Jameson v. Lewis, 131 Fed. 728, 729, 65 C. C. A. 586; Alaska Packers' Ass'n v. Domenico, 117 Fed. 99, 101, 54 C. C. A. 485. We have deemed it needful, therefore, to examine the testimony in detail, and are impressed with its sufficiency to meet the utmost requirement of either of these tests for support of the finding.

The circumstances of the stranding, the existing and prospective conditions of weather and of the sand bottom in which the steamer was imbedded, and her inevitable loss unless released, sooner or later, by a wrecking expedition, are undisputed facts; and the testimony is free from material conflict in proof of the efforts made for such release by three successive expeditions employed for the purpose, and of actual difficulties encountered, so that the steamer was not released until the end of 64 days on the beach—together with the actual ex-

penses incurred by the underwriters therein, and the extent of damage suffered by the steamer in hull and outfit. In the proof submitted of the various material facts involved in the controversy (apart from opinion evidence), no conflict appears in matters of substance, except in reference to the actual extent of damage attributable to the stranding, namely, whether so-called "bottom damages" were pre-existing and so not chargeable. Error is assigned for not excluding this element of damage (and other elements hereinafter referred to), from the estimate of probable loss due to the stranding, and we deem it sufficient to remark, for the present consideration, that the finding in favor of the appellee thereupon is well supported by testimony, notwithstanding such conflict, and that the credibility of one and the other version is not an open question. The various witnesses called to estimate the expense required to make good the injuries sustained by the steamer differ widely in the estimates made on behalf of the parties respectively; but these differences are plainly reconcilable, for the reason that the inquiry on the part of the appellants excluded elements of injury (hereinafter discussed) which were included in the estimates introduced on the part of the appellee. So the force of each version must be measured by the correctness or incorrectness of its premises, and does not rest upon the credibility of witnesses.

Upon the crucial inquiry, however, of the probabilities of danger and loss to be apprehended from all the circumstances of the disaster, as of the date of abandonment, the opinion evidence introduced on the part of the appellant is directly in conflict with that given in support of the libel, and is irreconcilable, as well, with the conclusions of the trial court. The admissibility of such evidence, under that issue, is unquestionable, within the well-recognized limits of its reception and value, to aid the court in rightful understanding of the facts in evidence, from the viewpoint of expert knowledge and experience, plainly involved in this question of fact: What were the high probabilities of loss, both existing and prospective, imposed by the stranding? These opinions are without force except as they are consistent with and predicated alone on facts in evidence, are then advisory only of the import of such facts, and can neither supply nor set aside evidentiary circumstances in the case.

This class of testimony in favor of the appellant exceeds the opinion evidence introduced by the appellee, not only in positiveness, but in the number and seeming qualifications of the witnesses as experts. In substance, eight witnesses for appellant—Benham, Tuttle, James Reid, Sinclair, Baker, James T. Reid, Warkman, and Parry-Jones—testify that the circumstances of the stranding presented (a) no serious existing injury to the steamer, (b) no "difficult job to get her off" without serious injury, (c) no probable dangers in her position from sea or ice, (d) no probability that it would cost $30,000 to release and repair the steamer, nor "anything like $30,000," and (e) no probability that she would be injured seriously by the stranding, exposure, or wrecking operations, nor to any considerable amount even if not released during that winter. These concurring opinions of experts are clearly in point upon the issue of probabilities, and the appellants

contend, therefore, that they are decisive against the right of abandonment, and of error accordingly in the decree. We believe this contention to be untenable, however, under the evidential facts well established and plainly inconsistent with such opinions—irrespective of the question whether expert opinions are entitled to such controlling effect in any view of the facts. As before stated, subsequent efforts and events may be considered to ascertain the probabilities of conditions and loss which were to be apprehended at the stage of abandonment; and it is undoubted, as well, that occurrences or expenditures not within the range of probabilities are inadmissible for such purpose.

The testimony referred to is uncontroverted (except in reference to its bearing and force), and impresses us as both evidential and convincing for support of the decree. Measures for release of the steamer were promptly taken on behalf of the underwriters, by representatives of great experience and skill in such undertakings, and were constant and energetic for the utmost of speed and safety in their efforts to that end. The operations of the successive wrecking expeditions, and the various conditions of weather and shifting sand which caused failures during two months of trial, are detailed by the witnesses (mainly those engaged therein by the appellants), and are instructive throughout; but for the purposes of this review, it is sufficient to remark, as our understanding of the entire testimony, that each of the efforts so made, and all the various difficulties so encountered, appear to be within the high probabilities at issue. The dangers of that shore, at and after the close of the season of navigation, with the prevalence of like winds and adverse conditions, are clearly indicated by the testimony, together with like experience in other wrecking operations for release of steamers theretofore stranded in the vicinity; and the court was justified, as we believe, in accepting these facts for solution of the issue, rather than the abovementioned opinion testimony, upon which further comment is not required.

The finding of "high probability that the cost of rescue and repair would exceed thirty thousand dollars" rests equally upon the undisputed facts of these wrecking operations, of actual expenses incurred, and of actual damages suffered by the steamer beyond that amount. It is contended, however, that a large part of the actual damages so included are not within the issue. For expenses, the underwriters paid $10,800; for damages, $3,279.67 is conceded to be the loss in "outfit" of the steamer, and $19,500 is the estimated cost of repairs upon hull. The objections raised to these items of damage are (a) that the loss of outfit was not due to the stranding, but to neglect in leaving these furnishings, instead of taking them off when the cargo was removed, and (b) that the estimate for repairs includes so-called "stern damage," amounting to several thousand dollars, alleged to be "caused by mistake of the engineer" in backing, instead of going ahead, during the wrecking operations. Another objection, urged for including "bottom damages," alleged to be pre-existing, has been heretofore considered, and requires no further discussion. Whether one or the other version of cause for either of these conceded injuries appears to be best supported under the evidence, or to what

extent, if any, neglect or fault in the wrecking operations may have contributed thereto, do not impress us to be reviewable questions. True, the issue is not one of liability for damages due to stranding, as proximate cause thereof, but of probable results to be apprehended from such stranding; nevertheless, it is not reasonable to assume that wrecking operations will be faultless throughout their course, and just allowance for such contingencies may rightfully enter into the estimate of probabilities. This finding of probable cost and injury in excess of $30,000 is a general finding of fact under all the evidence, not resting for support on any specific element in controversy. From the nature of the issue, exactness in the measure of each element of probability is neither required nor attainable. The actual expenses and injuries which are uncontroverted approximate closely (in a comparative sense) the contract amount fixed for constructive total loss, leaving merely a reasonable margin, as we believe, for estimate of other probabilities. Moreover, the amount referred to of wrecking expenses paid excludes the important wrecking operations during December of the expedition called the "Great Lakes T. & W. Co.," for the reason that they were unsuccessful after persistent efforts, and their contract with the underwriters provided for payment only in the event of success. As the evidence establishes both well-directed and well-equipped service by this expedition, and the value of such service at customary rates, the fact of escape from payment therefor under the contract cannot bar the quantum meruit value of the service from consideration in making up the estimate.

We are of opinion, therefore, that the challenge of this decree for want of sufficient evidence must be overruled.

2. Error is assigned upon rulings against numerous offers of opinion on the issue of probabilities, under various forms of inquiry. Each of the witnesses thus interrogated had previously stated his opinion thereupon (as hereinbefore mentioned), substantially covering the inquiry thus ruled out, and the further answers sought were merely cumulative, at best. Assuming, therefore (without so deciding), that these further questions were otherwise admissible, as framed, no aspect appears in which either tended to strengthen the opinion testimony of such witness theretofore given, and it was within the discretion of the trial court to allow or disallow.

3. Allowance of interest on the amount of loss from March 2, 1906, is further assigned as error, for want of evidence that "due proof of loss was made." We do not understand that the formal proof of loss referred to is required, either under the terms of the policies in suit or any rule of law applicable thereto, for the purpose of recovery under an abandonment, where the right of abandonment is the single issue involved; and objection to the interest allowance in each of the decrees is overruled. The propositions thus considered and our views thereupon are equally applicable to both classes of policy in suit for support of the decrees respectively, and dispose of all objections raised to either recovery founded on the policy designated as "hull" insurance.

4. The decrees against the appellants, Commercial Union Insurance Co. (No. 1,485), Indemnity Mutual Marine Insurance Co. (No. 1,486) and the Sea Insurance Company (No. 1,487), are founded, in whole or

in part, on policies of the class named "disbursement insurance," which are alleged to involve a further question of liability under their peculiar terms. Each of these policies is independent of the general marine insurance upon the steamer, under "hull" policies heretofore considered, and is made payable only in the event of total loss, actual or constructive—a special and well-known form of marine indemnity inaptly named as above mentioned. As frankly conceded and fairly described in the brief for appellants, "It is a valid insurance, made to give a larger total loss recovery, without increasing the valuation —and thereby increasing the average deductible from losses and left with the owner—making a saving in premium." The insurer thereunder is without interest in salvage after abandonment. In each the special terms of the insurance are stated to be "against the risk of total or constructive total loss of the vessel only." Each contains, however, the following clause: "A total and/or constructive total loss paid by insurers on hull, to be a total loss under this policy." The contention is in effect that no right of action accrues under the policy, until total loss (actual or constructive) appears, together with its payment by the "insurers on hull." We are of opinion, however, that such interpretation of the last-mentioned clause is unauthorized under the plain terms of indemnity stated in the policy; that it is merely a provision for simplification of proof in the event stated, and not a limitation of liability; and that proof of the fact of such loss, however established, authorizes recovery.

5. The decree against the appellant Indemnity Mutual Marine Insurance Company is founded upon two policies, one of each class, and, upon one of the special provisions contained in its policy for "disbursement insurance," reversal of such decree is sought. This policy is written on a printed form obviously used for and adapted to "hull" insurance, with various clauses inapplicable to "disbursement insurance"; and, among these printed provisions, one clause reads: "The right of abandonment under this policy as for a constructive total loss, shall not exist unless the loss exceeds seventy-five per cent. of the value in this policy." Were such provisions controlling as the insurance contract, no ground would appear for the recovery. We are of opinion, however, that the controlling provision is contained in the rider attached to the policy, as indicated in the reference thereto, identical in terms with the other disbursement policies above described. It plainly refers to and adopts the provisions contained in the "hull" policies for definition of the constructive total loss thereby insured against, namely, a loss which "exceeds half the value of hull and machinery, as stated in the policy." Indeed, its own "hull" policy on the vessel so defines the risk; and the purpose is unmistakable in its supplemental contract to adopt the American rule of constructive total loss. The inconsistent printed clause referred to is without force, therefore, under the well-settled rule applicable to such instruments.

We believe no ground is presented for disturbing either decree appealed from; therefore each of these decrees of the District Court is affirmed.